272 P.2d 1012

SUTTON v. HUNZIKER et al.

No. 8050.

Supreme Court of Idaho.

July 7, 1954.

396

McNaughton & Sanderson, Coeur d'Alene, Bandelin, Bandelin & Ponack, Sandpoint, for appellants.

Whitla & Knudson, Coeur d'Alene, amicus curiae.

J. H. Felton and William J. Jones, Lewiston, Stephen Bistline, Sandpoint, for respondent.

PORTER, Chief Justice.

Prior to 1946, respondent built and developed a resort on Priest Lake in Bonner County. In the fall of 1946 and spring of 1947, Northern Lights, Inc., a corporation, constructed a power line from Paul Jones Beach on Priest Lake to the resort of respondent for the purpose of supplying electricity to respondent and other patrons. The line was connected with respondent's store and extended to cabins beyond the store. It was an overhead power line.

In the year 1947, respondent commenced to build an airport on his resort with a runway lying between his store and the cabins. Respondent thereafter demanded that the overhead power line be taken down between the store and the cabins as it interfered with his airport. It was discovered that the road along which such line was built was a private road and that Northern Lights, Inc., did not have a right of way. Respondent offered an easement for an underground right of way but refused to pay any of the expense of changing the line. The company demanded an easement for an unrestricted right of way and refused to put the line underground unless respondent paid the expense thereof.

After considerable ineffectual negotiation, the Board of Directors of Northern Lights, Inc., on May 16, 1950, passed a resolution in effect directing its manager to cut off the electric service to respondent's resort unless respondent executed an unrestricted easement for a power line across his property. Respondent refused to execute such easement, and in accordance with such resolution, the manager of the company, on or about July 1, 1950, cut off the lights and power serving respondent's resort. Thereafter, respondent applied for and was granted an alternative writ of mandamus requiring the company to reconnect the electricity to respondent's resort and to furnish the same service as had been theretofore furnished. After hearing, such writ of mandamus was made permanent. No appeal was taken and the company complied with the writ.

This action was commenced November 6, 1950, to recover the damages which respondent claims to have sustained by the disconnection of his electricity. Trial of the cause resulted in a verdict by the jury for compensatory damages in the sum of $4,092 and exemplary damages in the sum of $571.43 against each defendant. From the judgment entered on such verdict appeal has been taken to this court.

By their answers in this cause, appellants set out as an affirmative defense that the judgment entered in the original mandamus action was res adjudicata on the issues involved in this action, and consti-

tuted a bar to same. The court sustained the motion of respondent to strike out such affirmative defenses. Northern Lights, Inc., was originally one of the defendants named in this action, but before trial, respondent dismissed the action as against such company. The rulings of the trial court that the judgment in the mandamus action was not res adjudicata as to the issues in this action are assigned by appellant as prejudicial error. Whether the plea of res adjudicata was a good defense on behalf of Northern Lights, Inc., is a moot question and need not be discussed.

The mandamus action sought relief against the therein named defendant, Northern Lights, Inc., in that it sought a writ of mandate to compel the company to restore light and power service to respondent. It named the nine directors and manager as defendants in their representative capacity. No relief was sought against them. While some of the alleged damages resulting from the disconnection of the electric service were mentioned in the complaint by way of recital, no damages were prayed for; such issue was not presented to the court; and no damages were mentioned or allowed in the judgment. The present action is not against Northern Lights, Inc., nor against its directors and manager in their representative capacity. It is an action against six of the nine directors of the corporation and its manager, individually, for compensatory damages arising from the disconnection of

respondent's electric service, and for punitive damages.

In order for a judgment in one action to be res adjudicata in a subsequent suit there must be identity of parties or their privies. In 50 C.J.S., Judgments, § 601, p. 25, it is said:

"In order that a former judgment may become a bar to the maintenance of a present suit, it must have been rendered in an action between the same parties, or between those in privity with them."

In Collard v. Universal Automobile Ins. Co., 55 Idaho 560, at page 568, 45 P.2d 288, at page 291, we said:

"In order to make a judgment obtained in one action conclusive in another, it must appear that the former was rendered in an action between the same parties, or between those in privity with parties to the former action."

See, generally, Mays v. District Court, 34 Idaho 200, 200 P. 115; Evans v. Davidson, 57 Idaho 548, 67 P.2d 83; Ada County v. Bottolfsen, 61 Idaho 64, 97 P.2d 599; Adams v. Nampa & Meridian Irr. Dist., 73 Idaho 521, 254 P.2d 407.

It is apparent that the defendants in this action are not identical with the defendants in the mandamus action. In the mandamus action these defendants were only parties in their representative capacity. Here each is being sued as an

individual upon an alleged individual liability. In 30 Am.Jur., Judgments, par. 224, pp. 956–7, it is set out as follows:

"In order that parties for or against whom the doctrine of res judicata is sought to be applied may be regarded as the same in both actions, the general rule is that they must be parties to both actions in the same capacity or quality. Under this rule, a party acting in one right can be neither benefited nor injured by a judgment for or against him when acting in some other right. Thus, where a person brings an action or is sued in his individual right, a judgment rendered for or against him is not operative under the doctrine of res judicata in a subsequent action brought by or against the same person in a representative capacity. Similarly, a judgment rendered in an action in which one of the parties appears in a representative capacity is not operative under the doctrine of res judicata in a subsequent action involving the same party in his individual right."

The judgment entered in the mandamus action is not res adjudicata in this action and is not a bar to the prosecution of same.

█ During the trial of the cause the court repeatedly ruled that Northern Lights, Inc., was a public utility and bound to furnish electricity to any member of the public properly applying therefor. Appellants urge that these rulings of the court were erroneous. They contend that Northern Lights, Inc., is not a public utility and is only required to serve its duly elected members.

Northern Lights, Inc., is a non-profit cooperative association organized under the provisions of Title 30, Chapter 10, I.C. It has no capital stock but is composed of members whose interests in the association are represented by membership certificates. It was organized for the purpose of furnishing electric service to its members in pursuance of the objects of the Rural Electrification Administration created by acts of Congress. Article II of its constitution states the purposes for which it was formed; and Section (a) thereof reads in part as follows:

"To generate, manufacture, purchase, acquire and accumulate electric energy *for its members only* and to transmit, distribute, furnish, sell and dispose of such electric energy to *its members only*, * * *." (Emphasis supplied.)

Our public utilities law is contained in Title 61, I.C. Section 61–104 I.C., reads as follows:

"The term 'corporation' when used in this act includes a corporation, a company, an association and a joint stock association, but does not include a municipal corporation, or mutual

nonprofit or cooperative gas, electrical, water or telephone corporation or any other public utility organized and operated for service at cost and not for profit, whether inside or outside the limits of incorporated cities, towns or villages."

Section 61–119, I.C., defines an electrical corporation and does not, in terms, exclude a non-profit cooperative association. However, Section 61–119, I.C., was put in its present form by an amendment contained in Chapter 2, 1915 Session Laws. Prior to 1917, Section 61–104, I.C., did not contain any exemption clause. By Chapter 128 of the 1917 Session Laws, such section was amended to contain the exemption and to read as it now does. It is thus apparent that the Legislature intended to exempt mutual non-profit cooperative electrical corporations from the provisions and the requirements of the public utility law. We hold that Northern Lights, Inc., is not a public service corporation required by our public utility law to serve all proper applicants, but is a non-profit cooperative association only required to serve its members. See Humbird Lumber Co. v. Public Utilities Commission, 39 Idaho 505, 228 P. 271; Inland Empire Rural Electrification v. Department of Public Service, 199 Wash. 527, 92 P.2d 258; Garkane Power Co. v. Public Service Commission, 98 Utah 466, 100 P.2d 571, 132 A.L.R. 1490; People v. California Central Airlines, Cal.App., 258 P.2d 577.

Appellants urge that the court committed prejudicial error in giving its Instruction No. 1 to the jury. The part of the instruction to which complaint is made, reads as follows:

"And you are further instructed that it is conceded, and thus established as a true fact that the defendants,
Walter P. Hunziker,
A. G. Irish,
Charles E. McGlocklin,
Carl Meserve
Paul B. McKee,
Erick Nelson,
on the 16th day of May, 1950, in the presence of Ora *A.* Beasley, passed the following resolution, to wit:

" 'After luncheon a trip was made to the property of Mr. Rex Sutton at Sutton Resort for the purpose of inspecting the line, air-strip and all conditions creating the situation in connection with easement across Mr. Sutton's property. Further discussion with Mr. Sutton did nothing to improve the situation. After return to the original place of meeting and further discussion, it was moved by Mr. Irish that the manager, together with the attorney for the cooperative meet with Mr. Sutton's attorney in a final attempt to reach a possible agreement, with instructions to use the withdrawal of power from the premises as a lever if necessary to secure an

unrestricted right of way. Mr. McKee seconded the motion, which carried unanimously when put to a vote.'

"That the action of such defendants in so directing Mr. Beasley, and Mr. Beasley's act in disconnecting plaintiff's electricity, are as a matter of law unreasonable, unlawful, tortious and improper and defendants are liable to plaintiff and all damages, accruing to Mr. Sutton as a result thereof."

This instruction withdrew from the jury the question of liability for compensatory damages and only left it to the jury to fix the amount. It is, in effect, a directed verdict. Despite such instruction, the court by its Instruction No. 15, told the jury that the defendants were not liable for damages to the plaintiff unless the jury should find from the evidence that the act of the Northern Lights, Inc., in discontinuing plaintiff's electric service was wrongful.

Section 30–1005, I.C., provides that the by-laws of nonprofit cooperative associations may provide, among other things:

"1. The number and qualification of members and the terms and conditions of admission.

"2. The time, mode, conditions and effect of expulsion or withdrawal from and of restoration to membership.

\*    \*    \*    \*    \*    \*

"6. Other regulations not repugnant to the laws of the state and consonant with the objects of the association."

Article VI, Section 2, subparagraph (c), of the constitution of the company provides that a person may become a member by, among other things,

"agreeing to comply with and be bound by the Articles of Incorporation of the Corporation and the by-laws and any amendments thereto and such rules and regulations as may from time to time be adopted by the board of Directors, provided, however, that no person, firm, corporation or body politic shall become a member unless and until he or it has been accepted for membership by the board of directors or the members."

Article I, Section 5, of the By-Laws of Northern Lights, Inc., provides as follows:

"Expulsion of Members. The board of directors of the Cooperative may, by the affirmative vote of not less than two-thirds (⅔) of the members thereof, expel any member who shall have violated or refused to comply with any of the provisions of the articles of incorporation of the cooperative or these bylaws of any rules or regulations adopted from time to time by the board of directors. Any member so expelled may be reinstated as a

member by a vote of the members at any annual or special meeting of the members. The action of the members with respect to any such reinstatement shall be final."

Rule 1 of the Rules and Regulations of Northern Lights, Inc., reads as follows:

"Resolved that all members of the Coop shall give an easement across their property for reasonable construction of a power line and any member refusing to do so shall be refused further electrical service and shall be dropped from membership unless the easement be given."

Respondent was a member of the corporation. His accepted application for membership contained the following provision:

"4. The Applicant will comply with and be bound by the provisions of the charter and by-laws of the Association, of which he will be a member, and such rules and regulations as may, from time to time, be adopted by the Association."

■ The Constitution, By-Laws and Rules of the association and the accepted application of respondent for membership constitute a binding and enforceable contract. Northern Lights, Inc., was entitled to request an easement across the property of respondent for the reasonable construction of a power line. A refusal by respondent to comply with such a request

would justify the company in refusing to furnish further electric service. For an extended discussion and parallel holding on this point, see, King v. Farmers Electric Coop., 56 N.M. 552, 246 P.2d 1041.

■ The real issue in this case in this connection is whether the demand by the Northern Lights, Inc., for an unrestricted easement, whereby it could erect an overhead power line, or in the alternative for an easement for an underground line with payment by respondent of the additional cost thereof, was a reasonable request under all the circumstances shown by the evidence. If such request was unreasonable, respondent was justified in refusing to comply with same and the disconnection of his electric service was wrongful.

Instruction No. 1 took this question of fact from the jury and was erroneous and prejudicial.

A number of additional alleged errors are cited in the assignments of error. As the questions so raised are either determinable by the principles herein set out or will not likely be issues in a new trial of this cause, we will not lengthen this opinion by discussion of same.

The judgment of the trial court is reversed and the cause remanded for new trial. Costs to appellants.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.