CHOCTAW ELECTRIC CO-OPERATIVE, Inc., Plaintiff in Error,

v.

W. W. REDMAN et al., Defendants in Error.

No. 34970.

Supreme Court of Oklahoma.

Sept. 21, 1954.

As Amended Nov. 22, 1954.

Rehearing Denied Nov. 23, 1954.

Second Petition for Rehearing Denied Feb. 21, 1956.

Stamper & Dudley, Antlers, Finney & Finney, Idabel, for plaintiff in error.

Lee Welch, Antlers, for defendants in error.

JOHNSON, Vice Chief Justice.

This is an appeal by the Choctaw Electric Co-operative Inc., a rural electric co-operative organized and governed under the provisions of 18 O.S.1951 § 437 et seq., and by-laws adopted under authority of the statute, from a peremptory writ of mandamus issued by the District Court of Pushmataha County, Oklahoma, on May 31, 1950, which writ directed plaintiff in error, defendant below, and hereinafter referred to as co-operative, to build an electric transmission line a distance of approximately one and five-eighths mile and to furnish electrical service to W. W. Redman and seven others for whom Redman purported to sue as being similarly situated.

The record discloses that the co-operative was furnishing rural electric service to a large number of farm users in Choctaw, McCurtain and Pushmataha Counties; that defendant in error, W. W. Redman, hereinafter referred to as Redman lived on a farm four miles from Antlers, Oklahoma, in Pushmataha County; that travel to such farm is north from Antlers over Federal Highway 271, a distance of about two and five-eighths miles to a point near and north

of Kiamichi River bridge and from there over a county road running due east a distance of one and three-eighths miles; that the co-operative had and used a main or distribution electric transmission line along said Highway 271, for a considerable period of time prior to the filing of this action; that Redman for himself and others who lived between him and the co-operative's main electric line sought by this action in mandamus to require the co-operative to erect an auxiliary electric transmission line one and three-eighths miles over said county road from such main electric line on said Highway 271 to his property and thereby furnish him and his neighbors with electric service.

The record discloses that Redman had on June 22, 1948, signed up and filed with the co-operative on its regular form, his application for membership and for electric service; that prior to the commencement of the action the co-operative had surveyed and approved as a project such proposed auxiliary line and furnishing of such electric service, had procured easements therefor, and June 28, 1948, wrote Redman a letter from its Hugo office in which the co-operative said:

"In regard to the line to your place. Can't promise you how soon this can be built. But just as soon as we can get to it we will do so. It shouldn't be long until our crew can get on the job. And I'll keep reminding them of it.

"Very truly yours,
"Choctaw Elec. Co-op.
"By Leon Bates, Coordinator"

That repeatedly thereafter he requested that the co-operative proceed to erect the line and furnish him and his neighbors with electric service which it failed to do resulting in filing of this suit on September 28, 1949.

This co-operative under the Rural Electric Cooperative Act of Oklahoma, 18 O.S. 1951 § 437 et seq., to which it owes its entire creation and existence, may exercise the right of eminent domain, use public highways for its lines, etc., sue and be sued in its corporate name and has express power to furnish electricity to its members, to governmental agencies and political subdivisions, and to other persons not in excess of 10% of the number of its members. 18 O.S.1951 § 437.2. The Act, 18 O.S.1951 § 437.26, expressly excludes Rural Electric Co-operatives from the jurisdiction and control of the Corporation Commission.

For reversal and vacation of the peremptory writ of mandamus, the co-operative, a domestic corporation, presents alleged error under nine propositions.

The first, in substance, is that venue of Redman's action is not within Pushmataha County, Oklahoma.

The Sheriff's return shows that the alternative writ of mandamus was served in Pushmataha County, Oklahoma on Vance Womack, who resided in said county and was trustee and vice president of Choctaw Electric Co-operative Inc., Also, the writ shows service of the Sheriff of Choctaw County, Oklahoma, upon John A. Bryan, president of Choctaw Electric Co-operative, Inc., in Choctaw County. The co-operative's principal place of business was in Hugo, Oklahoma, Choctaw County, but it maintained a warehouse for material and equipment, three full-time employees in transacting its business in Pushmataha County and three trustees, including Mr. Womack, all of whom resided in Pushmataha County.

The proposed auxiliary electric line to furnish Redman and his neighbors with electric service was to be located in Pushmataha County.

Under the circumstances the contention of the co-operative is without merit. An action against a domestic corporation may be brought in any county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside or be summoned, or in the county where the cause of action or some part thereof arose. 12 O.S.1951, § 134.

Under propositions two and three it is argued that since Redman filed a suit against the co-operative for damages for failure to carry out its alleged promise to furnish him electrical service, which suit was admittedly filed and was pending at the

time this mandamus action was commenced that he had an adequate remedy at law. Citing 12 O.S.A. § 1452.

We do not agree. The damage suit was for the purpose of obtaining compensation caused by the alleged wrongful refusal of service while the mandamus action, if proper, which question we shall hereinafter discuss, was for the purpose of procuring such service. The action for damages obviously would not afford an adequate remedy, therefore mandamus may lie. 55 C.J.S., Mandamus, § 19, p. 50. See 12 O.S.1951 §§ 1451, 1452.

Under proposition four it is contended that a rural electric co-operative, organized and operated under the Rural Electric Co-operative Act is not a public utility and is therefore under no duty to provide service to the public, or Redman.

It is conceded by the co-operative that if the District Court had venue and jurisdiction in all other respects this proposition would be determinative of this cause, and we agree. We think that the one and only issue before us is whether under the circumstances Redman is a member, and if he is a member may he invoke the special process of mandamus.

We think that under the circumstances of the present case, defendant is estopped to deny that the plaintiff Redman is one of its members, or that he had been accepted as such, in the manner provided by its by-laws.

The law of electric co-operatives is of recent origin and no precedent is available for our guidance and the case is one of first impression, but we recognize that membership in such co-operatives should be limited to those for whom electric service is available, or to those who actually will buy from or through the co-operative.

Assuming without deciding that the co-operative is as contended by it, not a public utility and excluded from control by the Corporation Commission, then is there no process whereby a member such as Redman (notwithstanding the co-operative's contention that he is not a member) may obtain his right to the very services for which the co-operative was formed, to wit:

to furnish electricity to its members? We think there is, but if not, then by the same process of reasoning a member would not have a right to the continued services of the co-operative if perchance its officers, without cause, discontinued to serve such member. Under the last named circumstances such member would clearly be entitled to relief through the legal process of mandamus. See 12 O.S.1951 § 1451 and the Rural Electric Cooperative Act, supra.

Redman apparently had done everything that was required of him to become a member. Though the co-operative refused to recognize membership rights in him, such refusal, in view of our determination of the ineffectiveness of its denial of his membership, must herein be considered the same as arbitrary discrimination against a member. A fundamental aspect of cooperation is equality. The co-operative's arbitrary discrimination in refusing Redman services due him as a member violated this fundamental principle of the organization and mandamus is, we think, the proper remedy to prevent the co-operative from engaging in such practice contrary to the basic principles under which the organization (co-operative) came into existence.

As to Redman's action on behalf of his neighbors, who are similarly situated except as to membership, it is doubtful whether they, as non-members, under the present status of the law of electric co-operatives as distinguished from public utilities, have a legal right to obtain relief by mandamus, even though they are more favorably situated and beneficial to the co-operative than Redman, and this fact probably had something to do with their being included in the trial court's order. To wrongfully exclude them would be discrimination against them but such wrong is apparently without a remedy. A theoretical answer to the question might be that co-operatives are democratic in character and simply would not engage in such discrimination. Be that as it may, we do not herein pass upon that phase of the writ.

From a careful examination of the entire record we think the law enjoins the duty upon this co-operative to furnish its members electric service and that the gov-

erning board of an electric co-operative not otherwise controlled is amenable to the writ of mandamus and by such writ may be compelled to perform that duty where it appears that such failure is the result of arbitrary discrimination against a member.

Other questions are raised but in view of what we have said we deem it unnecessary to discuss them.

Judgment affirmed as to Redman.

HALLEY, C. J., and CORN, DAVISON, and BLACKBIRD, JJ., concur.

WILLIAMS, J., dissents.

WILLIAMS, Vice Chief Justice (dissenting, upon denial of application for permission to file second petition for rehearing).

I consider the majority opinion herein to be so completely erroneous as to impel recordation of my view of the case.

The appeal is from a peremptory writ of mandamus issued by the trial court, which writ directed defendant to immediately construct and build an electric transmission line some one and seven-eighths miles in length in order to furnish plaintiff and seven others with electric service.

The remedy by "mandamus" in this state is authorized and governed by statutory provision, namely, 12 O.S.1951 §§ 1451 to 1462, inclusive. It is distinguished from the ordinary civil action by 12 O.S.1951 §§ 3 to 5, inclusive, and as therein distinguished is a "special proceeding." By virtue of the provisions of 12 O.S.1951 § 1459, the only pleadings or written allegations allowed are the writ and the answer, and the issues are thereby joined. By virtue of 12 O.S.1951 § 1452, the writ of mandamus may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law, and by virtue of 12 O.S.1951 § 1451, it may only be used to compel the performance of any act *which the law specifically enjoins as a duty, resulting from an office, trust or station.* In no case will a writ issue unless the applicant therefor show himself entitled to a clear legal right thereto. Bath v. Dumas, 108 Okl. 260, 236 P. 1; Close Bros. & Co. v. Oklahoma City,

77 Okl. 104, 186 P. 931; Strother v. Bolen, 72 Okl. 310, 181 P. 299; City of Shawnee v. Tecumseh, 52 Okl. 509, 150 P. 890.

Such being the case, it becomes pertinent to inquire as to wherein the law specifically enjoins upon defendant the duty of building the nearly two mile long electric transmission line which plaintiff and the trial court seek to force it to build.

It is alleged in the alternative writ that under the laws of the State of Oklahoma it is the duty of defendant to build such electric line because it is a public utility, or in the nature of same, and does not have any right to refuse to build the line sought and furnish plaintiff with electric service. In issuing the peremptory writ of mandamus the trial court found such allegation to be true. From the judgment rendered on the issue thus raised, defendant has appealed, asserting as its principal proposition of error that it, being a rural electric co-operative organized and operated under the Rural Electric Cooperative Act, is not a public utility and is therefore under no duty to provide service to the public or to plaintiff.

I am of the opinion that such contention is well taken. I am also of the opinion that defendant is entitled to have the case decided on the issues tried and passed on in the trial court and properly raised on appeal in this court.

The law places certain duties to the public upon a public utility under which such utility may be required, within reasonable limitations, to serve all inhabitants of a city, town, community or area which it has undertaken to serve, who may apply for such service. Oklahoma Gas & E. Co. v. State, 87 Okl. 174, 209 P. 777; Oklahoma Natural Gas Co. v. Corporation Commission of Okl., 88 Okl. 51, 211 P. 401, 31 A.L.R. 330; Oklahoma Gas & Electric Co. v. Wilson & Co., 146 Okl. 272, 288 P. 316; Southwestern Natural Gas Co. v. Cherokee Pub. Service Co. 172 Okl. 325, 44 P.2d 945. The law places no such duty upon one not a public utility, however. It is thus apparent that the crux of this case is the question of whether defendant is a public utility, since if it is such public utility the law imposes certain duties upon it which

could properly be enforced by mandamus, but if it is not a public utility, there is no duty imposed by law which would constitute the basis for mandamus.

This court has many times considered the question of what constitutes a public utility. In the first of such cases, State ex rel. Edwards v. Millar, 21 Okl. 448, 96 P. 747, 753, which was decided before the enactment of a statutory definition of "public utility", this court had before it the question of the meaning of the term "public utility" as used in Article X, section 27, of the Constitution of Oklahoma, and said in the opinion rendered:

> "There is a dearth of authority on what it takes to constitute a public utility. It is held in Valley City Salt Co. v. Brown, 7 W.Va. 191, that the expression 'public utility' is synonymous with 'public use'".

Such opinion has been cited with approval many times.

The legislature has defined "public utility" in 17 O.S.1951 § 151, as meaning and including:

> "Every corporation, association, company, individuals, their trustees, lessees, or receivers, successors or assigns, except as hereinafter provided, and except cities, towns, or other bodies politic, that now or hereafter may own, operate, or manage any plant or equipment, or any part thereof, directly or indirectly, *for public use,* or may supply any commodity *to be furnished to the public.*
>
> "(a) For conveyance of gas by pipe line.
>
> "(b) For the production, transmission, delivery or furnishing of heat or light with gas.
>
> "(c) For the production, transmission, delivery or furnishing electric current for light, heat or power.
>
> "(d) For the transportation, delivery or furnishing of water for domestic purposes or for power." (Emphasis added.)

17 O.S.1951 § 152 vests in the Corporation Commission jurisdiction and general supervision over all public utilities.

While this court has never before had occasion to pass on the question, the Corporation Commission of this state held in the case of Southwestern Telephone Co. v. Oklahoma Inter County Electric Cooperative, June 17, 1938, 27 P.U.Reports (N.S.) 321, as follows:

> "A non-profit Co-operative organized and existing pursuant to Sec. 9894, O.S.1931 [18 O.S.1951 § 421], for the purpose of selling and distributing electricity to its stockholders and members in rural areas upon a co-operative plan and professing, intending, and purposing to serve its stockholders and members only, and not to the public generally, is not a public utility."

Apparently the legislature was in agreement with such holding as the following year, 1939, it specifically provided in 18 O.S.1951 § 437.26 that cooperatives transacting business in this state pursuant to the Rural Electric Cooperative Act shall be exempt in all respects from the jurisdiction and control of the Corporation Commission. Since the legislature had already vested jurisdiction and control over all public utilities in the Corporation Commission, the enactment was tantamount to a legislative declaration that such a cooperative was not a public utility.

The pertinent provisions of the Rural Electric Cooperative Act, under which defendant was organized, are as follows:

18 O.S. 1951 § 437.1:

> "Cooperative, non-profit, membership corporations may be organized under this Act for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas. Corporations organized under this Act and corporations which become subject to this Act in the manner hereinafter provided are hereinafter referred to as 'cooperatives.'"

18 O.S. 1951 § 437.2:

> "A cooperative shall have power:
>
> * * *
>
> "(d) To generate, manufacture, purchase, acquire, accumulate, and transmit electric energy, and to distribute, sell, supply and dispose of electric

energy in rural areas to *its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per centum (10%) of the number of its members."* (Emphasis added.)

18 O.S. 1951 § 437.6:

"The original by-laws of a cooperative shall be adopted by its board of trustees. Thereafter by-laws shall be adopted, amended or repealed by its members. The by-laws shall set forth the rights and duties of members and trustees and may contain other provisions for the regulation and management of the affairs of the cooperative not inconsistent with this Act or with its articles of incorporation."

18 O.S. 1951 § 437.7:

"No person who is not an incorporator shall become a member of a cooperative unless such person shall agree to use electric energy furnished by the cooperative when such electric energy shall be available through its facilities. The by-laws of a cooperative may provide that any person, including a corporation, shall cease to be a member thereof if he shall fail or refuse to use electric energy made available by the cooperative *or if electric energy shall not be made available to such person by the cooperative within a specified time after such person shall have become a member thereof.* Membership in the cooperative shall not be transferable, except as provided in the by-laws. The by-laws may prescribe additional qualifications and limitations in respect to membership." (Emphasis added.)

Defendant has adopted by-laws in accordance with the foregoing statutory provisions, which by-laws were introduced in evidence. The pertinent parts of such by-laws are as follows:

"The aim of Choctaw Electric Cooperative, Inc., is to make electric energy available to its members at the lowest cost consistent with sound economy and good management.

"Article 1. Membership—Section 1. Requirements for Membership. Any person, firm, association, corporation or body politic or subdivision thereof may become a member in Choctaw Electric Cooperative, Inc., (hereinafter called the 'Cooperative') by:

"(a) filing a written application for membership therein;

"(b) agreeing to purchase from the Cooperative electric energy as hereinafter specified;

"(c) agreeing to comply with and be bound by the articles of incorporation and by laws of the Cooperative any rules and regulations adopted by the board of trustees; and

"(d) paying the membership fee hereinafter specified; provided, however, that no person, firm, association, corporation or body politic or subdivision thereof shall become a member unless and until he or it has been accepted for membership by the board of trustees or the members. No member may hold more than one membership in the Cooperative, and no membership in the Cooperative shall be transferable.

"At the meeting of the members held subsequent to the expiration of a period of six months from the date of incorporation of the Cooperative, all applications received more than ninety days prior to such meeting and which have not been rejected by the board of trustees shall be submitted by the Secretary to such meeting, and, subject to compliance by the applicant with the requirements hereinabove set forth, such applications or any one or more of them may be accepted by vote of the members. The secretary shall give each such applicant at least ten days notice of the date of the members' meeting to which his application will be submitted and such applicant shall be entitled to be present and heard at the meeting.

"Section 2. Membership Certificates. Membership in the Cooperative shall be evidenced by a membership

certificate which shall be in such form and contain such provisions as shall be determined by the board of trustees. Such certificate shall be signed by the President and by the Secretary of the Cooperative and the corporate seal shall be affixed thereto. No membership certificate shall be issued for less than the membership fee fixed in these bylaws, nor until such membership fee has been fully paid for in cash. In case of a lost, destroyed or mutilated certificate, a new certificate may be issued therefor upon such uniform terms and indemnity to the Cooperative as the board of trustees may prescribe."

It is readily apparent that the statutory provisions and bylaws under which defendant was organized and operates do not even authorize defendant to serve the public generally, much less require such public service. The general rule in other jurisdictions is that nonprofit cooperatives of the nature of defendant here are not public utilities. Garkane Power Co., Inc., v. Public Service Commission of Utah, 98 Utah 466, 100 P.2d 571, 132 A.L.R. 1490; Inland Empire Rural Electrification v. Department of Public Service, 199 Wash. 527, 92 P.2d 258; Schumacher v. Railroad Commission, 185 Wis. 303, 201 N.W. 241; State v. Southern Elkhorn Teleph. Co., 106 Neb. 342, 183 N.W. 562; Batesville Tel. Co. v. Public Service Commission, 7 Cir., 46 F. 2d 226; Massac County Farm Bureau v. Massac County Mut. Teleph. Co., P.U.R. 1927D 102; Sutton v. Hunziker, 75 Idaho 395, 272 P.2d 1012, 1014.

In Sutton v. Hunziker, supra, decided July 7, 1954, the Supreme Court of Idaho said:

"During the trial of the cause the court repeatedly ruled that Northern Lights, Inc., was a public utility and bound to furnish electricity to any member of the public properly applying therefor. Appellants urge that these rulings of the court were erroneous. They contend that Northern Lights, Inc., is not a public utility and is only required to serve its duly elected members.

"Northern Lights, Inc., is a nonprofit cooperative association organized under the provisions of Title 30, chapter 10, I.C. It has no capital stock but is composed of members whose interests in the association are represented by membership certificates. It was organized for the purpose of furnishing electric service to its members in pursuance of the objects of the Rural Electrification Administration created by acts of Congress. * * *

" * * * We hold that Northern Lights, Inc., is not a public service corporation required by our public utility law to serve all proper applicants, but is a non-profit cooperative association only required to serve its members."

I am therefore of the opinion that defendant is not a public utility and is therefore under no duty to serve the public or any member thereof who may apply therefor.

The majority opinion, while tacitly conceding that defendant is not a public utility, says that the only question before this court is whether plaintiff is a member of defendant cooperative, and if he is a member, may he invoke the special process of mandamus. Such opinion then answers both such questions in the affirmative, without any citation of authority therefor. I am of the opinion that the majority opinion erroneously states the question presented and then erroneously answers the question thus stated.

Nowhere in the pleadings, which as above indicated are limited by statute to the alternative writ and the answer thereto, does plaintiff claim to be a member of the cooperative nor does he claim the right to mandamus by virtue of such membership. On the contrary, the alias alternative writ alleges the duties of the defendant to "the public, including said Redman and said others named herein." Nor does the evidence adduced at the trial show plaintiff to be a member of defendant cooperative. On the contrary, it shows that he has never become a member thereof. The evidence specifically shows that plaintiff has never been elected to membership in either of the two ways provided, that is by the board of trustees or by the members themselves

in regular meeting, has never paid the membership fee, and has never been issued a membership certificate. Furthermore, the trial court did not find plaintiff to be a member of the cooperative and issue the writ on such basis. The trial court found defendant to be a public utility and issued the writ on that basis.

In the face of such state of the record in the case, the majority opinion creates for plaintiff a membership in the defendant cooperative, a membership which plaintiff has neither pleaded nor proven and which the trial court has not adjudicated.

Furthermore, even if plaintiff were a member of the cooperative and had properly pleaded and proven such membership, it still does not follow that he is entitled to the writ sought. The law does not enjoin upon defendant the duty of building an electric transmission line to each and every member's residence immediately and without regard to the cost or feasibility of such construction. On the contrary, 18 O.S. 1951 § 437.7, supra, specifically authorizes defendant to terminate the membership of any person to whom it has not made electric energy available within a specified time. In any event, the right of a member of a cooperative to service, if such right there be, is contractual in nature and may be enforced only in and by an appropriate action therefor, of which the extraordinary writ of mandamus is not one. The case of Sutton v. Hunziker, supra, was an action by a member of an electric cooperative for damages for alleged wrongful discontinuance of electric service to such member. In that case the court said:

"Respondent was a member of the corporation. His accepted application for membership contained the following provision:

"'4. The Applicant will comply with and be bound by the provisions of the charter and by-laws of the Association, of which he will be a member, and such rules and regulations as may, from time to time, be adopted by the Association.'

"The Constitution, By-Laws and Rules of the Association and the ac-

cepted application of respondent for membership constitute a binding and enforceable contract."

In the case of King v. Farmers Electric Coop., Inc., 56 N.M. 552, 246 P.2d 1041, 1045, a member of the cooperative who had been expelled therefrom brought an action in equity to enjoin the cooperative from depriving him of electric service. In the opinion the court said:

"The plaintiff agreed, if accepted as a member of the Cooperative, to abide by all its rules, regulations and by-laws. He was accepted on that condition and will not now be permitted to repudiate the same.

"The Cooperative is a non-profit corporation organized under the Rural Electric Cooperatives Act of New Mexico, chapter 47, Session Laws of 1939, the same being Section 48-401 et seq., of New Mexico Statutes 1941 Annotated. This statute, together with the articles of incorporation and the by-laws of cooperative, and the application made by the plaintiff, and the certificate of membership issued to him, constitute the contract between plaintiff and the Cooperative."

Since the right of a member to electric service is contractual and dependent upon the terms of the contract, such member has an adequate remedy for any breach thereof by either an action for specific performance or an action for damages for breach of contract, or in some cases, as illustrated by King v. Farmers Electric Coop. Inc., supra, an action for injunction might be appropriate. In any event mandamus is not an appropriate remedy for enforcing purely contractual obligations. 55 C.J.S., Mandamus, § 56, p. 97.

The majority opinion not only creates a membership which does not exist and fixes upon defendant a duty toward the member so created which does not exist in law, but goes further and creates the right to immediate construction of a service line to plaintiff's premises in preference to hundreds of other members or applicants whose applications for service and memberships antedated plaintiff's application by

many years, and this notwithstanding the proven economic infeasibility of such construction and the lack of the funds and ability of defendant to carry out such construction.

The uncontradicted evidence in this case establishes that the cost of building the line which the trial court and the majority opinion order built will be in excess of $4,000. Defendant, as a non-profit cooperative, has no funds with which to construct such line. The lines which defendant has built and now operates were paid for by a loan obtained from the Rural Electrification Administration, an agency of the federal government. Everything owned by the cooperative is mortgaged to secure the repayment of such loan. The mortgage covers every piece of property owned or thereafter acquired. Under the terms of the loan contract, practically every action of defendant cooperative requires approval from the Rural Electrification Administration. The only way defendant can secure the funds to build the line which it has been ordered to build is by obtaining an additional government loan from the Rural Electrification Administration. The Rural Electrification Administration will not make or approve such loan unless and until it approves the proposed construction for which the loan is sought. Should defendant build the line it has been ordered to build without the approval of the Rural Electrification Administration, even though it were able to do so without obtaining an additional government loan, such action would constitute a violation of the original loan contract and a default thereunder which would subject defendant to such of the remedies prescribed in the loan contract as the Rural Electrification Administration might elect to enforce. The line which the majority opinion orders defendant to build in violation of its loan agreement with the federal government has not been approved by the Rural Electrification Administration. Defendant offered to prove the Rural Electrification Administration had advised it that it would not approve such line and the

reasons therefor, but the trial court sustained objection to such offer. I am of the opinion that matters above related are entitled to more serious consideration than they have apparently received. The majority opinion requires defendant to do something it cannot legally do and which it is financially unable to do. If it were within the power of this court to require the Rural Electrification Administration to approve the construction of the line plaintiff seeks to have built and to make the loan which defendant must have to build such line, there might be a better basis for the majority opinion. Such is obviously not within the power of this court, however, since, among other reasons, neither the United States of America nor the Administrator of the Rural Electrification Administration is a party hereto, and I am of the opinion courts should not issue writs they cannot enforce and which obviously cannot be carried out.

I further disagree with the majority opinion because it does not completely dispose of the case. The trial court ordered defendant to build an electric transmission line to plaintiff Redman's residence, a distance of some one and five-eighths miles, and from there north a distance of an additional one-quarter of a mile, and to provide electric service to plaintiff Redman and seven others. The majority opinion affirms the trial court to the extent of the building of the line to plaintiff Redman's residence and furnishing him with service, but refuses to decide whether defendant must comply with the rest of the trial court's judgment by building the line from plaintiff's residence on north a quarter of a mile and providing electric service to the other seven parties specified in the writ. Such refusal, in my opinion, is erroneous.

I therefore respectfully dissent.

I am authorized to state that Justices JACKSON and HUNT concur in the views hereinabove expressed.