794 P.2d 620

**Lynn STEVENSON and Sun Valley Ranches, Inc., an Idaho corporation, Plaintiffs–Appellants,**

v.

**PRAIRIE POWER COOPERATIVE, INC., Defendant–Respondent,**

and

**Zane Harrison, Gene Hatch, Eileen Wood, Willard Wilson, Jim Kramer, and Arden Drake, Defendants.**

No. 18449.

Supreme Court of Idaho.

May 29, 1990.

Roden, Arkoosh & Riceci, Boise, for plaintiffs-appellants. C. Thomas Arkoosh argued.

Nelson, Rosholt, Robertson, Tolman & Tucker, Twin Falls, for defendant-respondent. Carolyn M. Minder argued.

JOHNSON, Justice.

These cases involve a rural electric cooperative (Prairie Power) and two of its members (Stevenson and Sun Valley Ranches, Inc.). The trial court granted summary judgments in favor of Prairie Power dismissing the claims of Stevenson and Sun Valley. Stevenson and Sun Valley appealed. We assigned the cases to the Court of Appeals. The Court of Appeals issued an opinion affirming the dismissal of Stevenson's claim that Prairie Power's policy was unreasonable, vacating the dismissal of Sun Valley's claims, affirming the award of attorney fees and nondiscretionary costs, finding error in the award of discretionary costs and remanding the cases for further proceedings. By our direction, the Court of Appeals opinion has not previously been published. On petition of Stevenson and Sun Valley, we granted review.

We have reviewed and considered the briefs, the record and the opinion of the Court of Appeals. We have also heard and considered the arguments of counsel. Considering all of these, we concur with the decision of the Court of Appeals as to the vacating of the dismissal of Sun Valley's claims and as to the award of attorney fees to the individual board members of Prairie Power. We vacate the dismissal of Stevenson's claim against Prairie Power on the ground that there was a genuine issue of material fact as to the reasonableness of the conditions Prairie Power imposed on Stevenson for the delivery of power. We remand these cases and the question of costs to the trial court for further proceedings consistent with our opinion and with the applicable part of the opinion of the Court of Appeals.

Because we have decided to depart from only the portion of the opinion of the Court of Appeals dealing with Stevenson's claim against Prairie Power, we now authorize the publication of the opinion of the Court of Appeals concurrently with this opinion. Except as we have indicated in this opinion, we accept the opinion of the Court of Appeals for the disposition of these appeals.

### I.

### THERE WAS A GENUINE ISSUE OF MATERIAL FACT AS TO THE REASONABLENESS OF THE CONDITIONS PRAIRIE POWER IMPOSED ON STEVENSON FOR THE DELIVERY OF POWER.

Stevenson asserts that the trial court should not have granted summary judgment dismissing his claim that the conditions Prairie Power imposed on him for the delivery of power were unreasonable. We agree.

Stevenson and Prairie Power both moved for summary judgment. Stevenson contended that *Sutton v. Hunziker*, 75 Idaho 395, 272 P.2d 1012 (1954), required that the conditions imposed on him by Prairie Power for the delivery of power must be reasonable. Stevenson argued that the conditions imposed by Prairie Power were not reasonable because: (1) they required payment in advance for 100 per cent of the irrigation season, even when an irrigator operated only a portion of the season and (2) they required an irrigator to make advance payment, even though the irrigator could not pay in advance and even though other alternatives to secure payment were available.

Prairie Power responded to Stevenson's reasonableness argument by citing *First Federal Savings & Loan Association of Twin Falls v. East End Mutual Electric Co.*, 112 Idaho 762, 735 P.2d 1073 (Ct.App. 1987), for the proposition that the conditions should be upheld if they were not arbitrary and did not infringe upon any fundamental public policy. Prairie Power contended that Stevenson had failed to es-

tablish that the conditions violated this standard.

The trial court found that the fee collection policy adopted by Prairie Power was reasonable. The Court of Appeals accepted the trial court's factual determination of reasonableness on the ground that Stevenson and Prairie Power had both moved for summary judgment on the same evidentiary facts and on the same issues and theories and had effectively stipulated that there was no genuine issue of material fact.

■ *Sutton* requires that Prairie Power's conditions for supplying power to Stevenson must be reasonable. In *Sutton* this Court held that a rural electric cooperative's demand for an easement across the property of one of its members must be "a reasonable request under all the circumstances shown by the evidence." 75 Idaho at 403, 272 P.2d at 1016. We said that if the request was unreasonable, the member was justified in refusing to comply with the request "and the disconnection of his electric service was wrongful." *Id.* Significantly for our purposes here, in *Sutton* we ruled that whether the request was reasonable was a factual question for the trier of fact—the jury in that case.

■ Here, there was a request for a jury trial. Even though both Stevenson and Prairie Power moved for summary judgment, this does not in itself establish that there was no genuine issue of material fact. *Casey v. Highlands Ins. Co.*, 100 Idaho 505, 507, 600 P.2d 1387, 1389 (1979). Whether the conditions imposed by Prairie Power were reasonable depends on a consideration of the facts presented by Prairie Power and by Stevenson on the motions for summary judgment. If there is any genuine issue of material fact created by these facts, summary judgment should not have been granted. I.R.C.P. 56(c).

Prairie Power defended the reasonableness of the conditions on the ground that the conditions were predicated upon a legitimate organizational objective—prevention of the inability to collect on irrigator accounts. Prairie Power contended that this would protect other members from incur-

ring economic hardship as a result of an irrigator's default. The only facts presented by Prairie Power as to the reason for the adoption of the policy was a statement in the minutes of the board of directors of Prairie Power and a statement by the chairman of the board of Prairie Power in his deposition.

The minutes of the board of Prairie Power for the meeting when the policy was adopted indicate that immediately before the policy was discussed the attorney for Prairie Power reported that he had received a bankruptcy plan for Sun Valley and that Sun Valley owed more than $10,000.00 to Prairie Power. The board then passed a motion that Sun Valley would have to notify Prairie Power by a date approximately two weeks later how Sun Valley would pay their bills. The motion stated that if Sun Valley did not commit itself for payment, their power would be turned off. The minutes indicate that the board then adopted the policy.

In his deposition, the chairman of the board of Prairie Power described the discussion that the board held before adopting the policy: "Counsel advised that we should have a customer irrigation—or irrigation customer policy because of the fact we was having trouble collecting irrigation accounts." Other than the Sun Valley account, there is no indication of what trouble Prairie Power was having in collecting irrigation accounts.

The Court of Appeals alludes to Prairie Power's financial records revealing that many irrigator members were delinquent in paying their accounts following the 1983 growing season. This is perplexing to us. The only place in the record on appeal where those financial records appear is by attachment to an affidavit of Stevenson's attorney. The attachments are the 1983 irrigator ledger cards of Prairie Power that were provided to Stevenson's attorney in response to a discovery request. However, the affidavit was not filed until after the trial court issued its decision granting summary judgment to Prairie Power against Stevenson. Whether these ledgers were considered by the trial court is not established by the record. They are not mentioned in the briefs of the parties on the motions for summary judgments, nor are they mentioned by the trial court in its decision. In any event the ledgers do not indicate that Prairie Power had not been paid the amounts owed by the irrigators at the time the policy was established.

Whether the conditions were reasonable should be measured by whether they were "[f]air, proper, just, moderate, suitable under the circumstances" or "[f]it and appropriate to the end in view." *Black's Law Dictionary*, 1138 (5th ed. 1979) (cited in *Giacobbi v. Hall*, 109 Idaho 293, 297, 707 P.2d 404, 408 (1985)).

In his affidavit Stevenson offered several reasons why the conditions were not reasonable. He pointed out that in prior years the payment policy had provided for monthly billing and payment within ten days after the bill was mailed. Prairie Power reserved the right to discontinue service for nonpayment. He stated that he could offer a crop lien and partial payments as a means of securing payment for the power he used.

The policy referred to "a letter of credit or some other notification from a lending institution or similar type of organization that the irrigator has financial ability to pay the season's irrigation bill." The amount that was to be referred to in the letter of credit or other notification was "the average of the last three years' power usage." Prairie Power acknowledged that cash would satisfy the requirement in lieu of a letter of credit or notification referred to in the policy.

In his affidavit Stevenson pointed out that the policy also included the provision:

This policy is not designed to pose a hardship upon anybody and the Board feels it is flexible enough to allow different types of arrangements for the different irrigators who may finance differently.

Stevenson alleged that he had asked the secretary of Prairie Power what alternatives were available other than a letter of credit or other notification from a lending institution. He said the secretary told him

that another irrigator, who was also self-financing, had simply written at the bottom of a copy of the policy that he would guarantee payment himself. Stevenson also alleged the efforts he had made to obtain power from Prairie Power during June 1984. These included a tender of $2,200.00 annual hook-up fee and an additional $1,300.00 for seven days use. Late in June, Stevenson finally convinced Prairie Power to turn on the power in exchange for payment in advance of the average of the last three years billings minus the month of June.

Construing the statements made by Stevenson in his affidavit liberally in his favor and giving them every reasonable intendment, as we must when considering the propriety of the summary judgment on this issue, we conclude that there was a genuine issue of fact as to the reasonableness of the conditions that Prairie Power imposed for furnishing power to Stevenson. It was not just the policy on its face that Stevenson challenged, but its application to him. The facts presented by Stevenson can be construed to indicate that Prairie Power did not reasonably consider the proposals he made for insuring his payment. Whether Prairie Power was reasonable under all the circumstances is an issue to be resolved by the trier of fact. Therefore, summary judgment should not have been granted.

For the guidance of the trial court we note that we have not engaged in the analysis employed by the Court of Appeals based on its decision in *East End Mutual Electric Co.* Whether Prairie Power's conditions for the delivery of power to irrigators was arbitrary or infringed upon a fundamental public policy such as nondiscrimination is not the measure of its reasonableness. *East End* was a declaratory judgment action. There, after a trial, the trial court declared the bylaws that were at issue to be reasonable. Here, on appeal Stevenson has raised reasonableness as the only issue.

In support of its standard in *East End* that a cooperative's "restraints are enforceable unless they are arbitrary or contrary to public policy," the Court of Appeals cited *Capital Electric Power Association v.*

*McGuffee,* 226 Miss. 227, 83 So.2d 837 (1955), *overruled on other grounds, Tideway Oil Programs, Inc. v. Serio,* 431 So.2d 454 (Miss.1983). In *McGuffee* the Mississippi Supreme Court cited *Sutton,* but distinguished it because of the differences in the law of Mississippi. 83 So.2d at 843. *Sutton* is the law of Idaho, not *McGuffee.* Reasonableness is the rule here in cases of this type.

## II.
## CONCLUSION.

We vacate the dismissal of Stevenson's claim that the conditions imposed on him by Prairie Power were unreasonable. We vacate the dismissal of Sun Valley's claims on the basis of the opinion of the Court of Appeals. We remand these cases to the trial court for further proceedings consistent with this opinion and with the applicable part of the opinion of the Court of Appeals.

As to the award of costs and attorney fees, the trial court should reconsider its award in light of the opinion of the Court of Appeals and of this Court.

We award no costs or attorney fees on appeal.

BAKES, C.J., and BISTLINE, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice specially concurring.

Having concurred in the opinion authored by Justice Johnson, and noting that the Court therein holds that "the summary judgment should not have been granted" to Prairie Power Cooperative, the Court returns the case to the district court to determine "whether Prairie Power was reasonable under all the circumstances." 118 Idaho at 34, 794 P.2d at 623. I would rather that the Court not insist on keeping the parties in continuing litigation. There is enough in the record to justify this Court in coming to a determination as a matter of law. The controlling case law precedent issued out of this Court thirty-six years ago. Because the error below would have gone unrectified had not Stevenson's attorney petitioned this Court for a review of the decision of the Court of Appeals, it seems

appropriate to display the well-drafted supporting brief which was filed in this Court, and which served the purpose of convincing me to write an opinion embodying pertinent portions of that brief. In that manner others might become sufficiently enlightened to grant review for the purpose of straightening out the law, and ascertaining if Stevenson had been dealt with erroneously or unfairly. When Justice McDevitt thereafter concurred in what I was able to put together, other members of the Court did provide a sufficient vote for review. It is believed also that the opinion set out below, which would have issued had review been denied, may serve to illustrate how the review process is initiated and how review is best obtained, which is earning it the old-fashioned way—by a petition and a supporting brief which is both credible and creditable:

BISTLINE, J., ON DENIAL OF PETITION FOR REVIEW.

Today the Court by three votes against two has declined to grant review of the Court of Appeals decision in this case. The rule established by this Court, I.A.R. No. 118(b) provides that the Court will grant review where it appears the Court of Appeals has decided a question of substance not heretofore determined by this Court or where such a question has been resolved but is not in accord with decisions of this Court.

The Court of Appeals states that the present situation is governed by *its* opinion in *First Federal Savings & Loan Association of Twin Falls v. East End Mutual Electric, Ltd.*, 112 Idaho 762, 735 P.2d 1073 (Ct.App.1987), in which the Court of Appeals accorded to rural electrical cooperatives a lessor degree of intrusion in dealings with members of the cooperatives. Neither party in that case petitioned this Court to review that decision. Accordingly the petition for review now before us requires, at the very least, that we make a cursory review of *First Federal.*

A short summary and analysis of the *First Federal* decision is provided in the Court of Appeals' *Stevenson* opinion:

We disagree with Stevenson's contentions. The present situation is governed by our recent opinion in *First Federal Savings and Loan Association of Twin Falls v. East End Mutual Electric Co., Ltd.*, 112 Idaho 762, 735 P.2d 1073 (Ct.App. 1987). In that case we considered whether the bylaws of a private electrical co-op may require, as a condition of transferring membership from one person to another, the payment of any delinquency in the outgoing member's account. In our opinion we noted that, under Idaho law,

nonprofit co-ops are not regulated to the same extent as public utilities. Because rural electrical co-ops had been omitted from state regulatory control, *we concluded that such organizations merited a lesser degree of public intrusion upon their freedom to contract with their members. We therefore held that the co-op could adopt such a policy, or any other regulations governing membership or the suspension or resumption of services,* so long as such restraints were not arbitrary and did not infringe upon a fundamental public policy such as nondiscrimination. *Id.* at 767, 735 P.2d at 1078.

At 33–34, 794 P.2d at 622–623 (emphasis added). The issue in *First Federal,* in essence, was whether it is "reasonable" for a co-operative electrical supplier to extort from a new member applicant payment of an old bill owed by a member who had lost both his membership and his real property. It is unfortunate that we were not asked to review *First Federal,* but fortunately it is now before us.[1]

Summarily, as has to be the treatment under the circumstances, it is noted that the Court of Appeals observed in *First Federal* that:

When a charge upon the membership is asserted against an incoming member, it is tantamount to a charge upon the membership certificate. Such charges may be authorized by statute or, as in this case, by contract embodied in the bylaws. PACKEL at 134–35. They are analogous to liens upon shares of stock in business corporations and are binding upon transferees who have actual or constructive notice of them. *Id.* ....

This charge. constitutes a restraint upon the right to transfer membership. Indirectly, it also represents a restraint upon the proposed transferee's right to join the cooperative.

112 Idaho at 765–66, 735 P.2d 1075–76. Directly following the above, the Court of Appeals concluded that *"[a] cooperative may promulgate appropriate and reasonable rules governing the admission and conduct of members."* *Id.* at 766, 735 P.2d at 1076 (emphasis added). For that proposition it relied upon three cases, one each from Idaho, Montana, and New Mexico. The Idaho case cited is *Sutton v. Hunziker,* 75 Idaho 395, 272 P.2d 1012 (1954). *Sutton* actually states that:

Section 30–1005, I.C., provides that the bylaws of nonprofit cooperative associations may provide, among other things:

1. The number and qualification of members and the terms and conditions of admission.

2. The time, mode, conditions and effect of expulsion or withdrawal from and of restoration to membership.

. . . .

6. Other regulations not repugnant to the laws of the state and consonant with the objects of the association.

75 Idaho at 402, 272 P.2d at 1019. There is no time to review the other two cases, but it will be

---

1. Alas, however, it returns at a time when this Court, as is true with the Court of Appeals, is deluged with a substantial increase in workload, and with this Court especially deluged by a large number of rearguments and reconsiderations of cases which had been heard but not decided at the time the Court was suddenly reduced to three members.

assumed that language therein does support the proposition asserted. We are only now asked to do one thing, which is not to redecide the case, but to grant review. It may be of some benefit to the three members of the Court voting "no review" that their attention be brought to a portion of the brief submitted to us by Mr. Arkoosh:

> The Montana Supreme Court, citing *Sutton v. Hunziker* from this Court, is explicit in this rationale:
>
>> While it is true that the member is bound by this agreement, *the articles, by-laws, rules and regulations of the cooperative must be reasonable. Sutton, supra; Smith v. Pickwick Electric Cooperative,* (1963), 212 Tenn. 62, 367 S.W.2d 755 [775]. Cooperatives hold a favored position in the law. In Montana, rural electric cooperatives have limited powers of eminent domain, Section 35–18–106(8), MCA; and are exempt from Montana tax laws, Section 35–18–503, MCA. Conversely, cooperative members are often in a disadvantageous position with respect to the cooperative, as they are in rural areas which are less likely to be serviced by a public utility and must rely on the cooperative for power. In dealing with the unreasonable rule, a member has the option of either attempting to amend the adopted rule or to discontinue service, both of which are inadequate remedies. This inadequacy is exacerbated by the circumstances in the present case where the member's residence is already connected with the cooperative and finding the alternative supply of electricity would be quite costly. *This disparity between the relative positions gives rise to an obligation on the part of the Cooperative to deal in a reasonable manner with its members.* The Cooperative may not foist either unreasonable rules or interpretations of rules on its members simply because they have agreed to be bound by the actions taken by the governing body. The adoption and implementation of all rules must be done fairly and in a reasonable manner with proper regard for the rights of the member and his property.
>
> [Emphasis supplied.] *Howe v. Big Horn Electric Cooperative, Inc.,* [206 Mont. 297] 670 P.2d 936, 937 (Mont.1983).
>
> The Idaho Court of Appeals in the instant action has declined to impose a reasonableness requirement upon a cooperative because such a requirement is not statutory. This conclusion ignores that the reasonableness requirement imposed by statute upon public utilities and the reasonableness requirement imposed by common law upon cooperatives emanate from exactly the same common law source as spelled out in *Munn v. Illinois* 94 U.S. 113 [24 L.Ed. 77] (1877). It is respectfully submitted that it is the duty of the courts to vitalize common law rights which have not been codified rather than eradicate them because they have not.

Appellant's Brief filed in Court of Appeals Case Nos. 17255, 17327, and 17350, at 10.

The *First Federal* opinion does cite two cases from Mississippi, and one each from Ohio and Oklahoma for the further proposition that "[s]uch restraints are enforceable unless they are arbitrary or contrary to public policy." 112 Idaho at 766, 735 P.2d at 1076. The well-written opinion proceeds on to its conclusion:

> Accordingly, we hold that such a charge may be imposed, pursuant to duly promulgated by-laws of an unregulated, private, nonprofit cooperative, as a condition of transferring an interest in the cooperative to a prospective new member who has notice that the charge must be paid before service will be furnished. *We have not* been cited, nor have we *found, cases contrary to this precise holding.*

112 Idaho at 767, 735 P.2d at 1077. Judge Meehl's district court decision was accordingly reversed.

However, although the Court of Appeals declared that it could find no cases contrary to its ultimate precise holding, it *had* found one, and cited it as well, but inadvertently was not aware of all that was involved therein:

> Prior to 1946, respondent built and developed a resort on Priest Lake in Bonner County. In the fall of 1946 and spring of 1947, Northern Lights, Inc., a corporation, constructed a power line from Paul Jones Beach on Priest Lake to the resort of respondent for the purpose of supplying electricity to respondent and other patrons. The line was connected with respondent's store and extended to cabins beyond the store. It was an overhead power line.
>
> In the year 1947, respondent commenced to build an airport on his resort with a runway lying between his store and the cabins. Respondent thereafter demanded that the overhead power line be taken down between the store and the cabins as it interfered with his airport. It was discovered that the road along which such line was built was a private road and that Northern Lights, Inc., did not have a right of way. Respondent offered an easement for an underground right of way but refused to pay any of the expense of changing the line. The company demanded an easement for an unrestricted right of way and refused to put the line underground unless respondent paid the expense thereof.
>
> After considerable ineffectual negotiation, the Board of Directors of Northern Lights, Inc., on May 16, 1950, passed a resolution in effect directing its manager to cut off the electric service to respondent's resort unless respondent executed an unrestricted easement for a power line across his property. Respondent refused to execute such easement, and in accordance with such resolution, the manager of the company, on or about July 1, 1950, cut off the lights and power serving respondent's resort. Thereafter, respondent applied for and was granted an alternative writ of mandamus requiring the company to reconnect the electricity to respondent's resort and to furnish the same service as had been theretofore furnished. After hearing, such writ of mandamus was made permanent. No appeal was taken and the company complied with the writ.

*Sutton,* 75 Idaho at 398, 272 P.2d at 1015 (1954).

The *Sutton* opinion resulted from a tort action entirely separate from the mandamus action. In

the tort action, damages were sought for the wrongful disconnect. The Supreme Court stated:

> The real issue in this case in this connection is whether the demand by the Northern Lights, Inc., for an unrestricted easement, whereby it could erect an overhead power line, or in the alternative for an easement for an underground line with payment by respondent of the additional cost thereof, *was a reasonable* request under all the circumstances shown by the evidence. If such request was unreasonable, respondent was justified in refusing to comply with same and the disconnection of his electric service was wrongful.
>
> Instruction No. 1 took this question of fact *from the jury* and [hence] was erroneous and prejudicial.

*Sutton,* 75 Idaho at 403, 272 P.2d at 1020. In *Stevenson* the district court took the same question of fact from the jury. The *Sutton* case is clearly applicable to the case we are asked to review today, where the underlying issue is the validity of a *summary judgment of dismissal,* which the Court of Appeals affirmed. The *Sutton* case did impose upon electrical cooperatives a requirement of reasonableness: "If such request was unreasonable, respondent was justified in refusing to comply with same and the disconnection of his electric service was wrongful," 75 Idaho at 403, 272 P.2d at 1020. Contrary to the Court of Appeals decision in the instant case, the question of whether the policy was reasonable is a factual determination for the jury.

It readily follows that the judgment of the district court in *Stevenson* was highly questionable. It would seem logical that had the district court, and in turn the Court of Appeals, recognized the "real issue" in these consolidated cases, it would have accorded *Sutton stare decisis* application; and likewise considered the Montana case which relied on *Sutton.* The Court's denial of review presents the trial bench and bar with a bit of an enigma. *Sutton* is established case precedent of thirty-five years adopting the requirement of reasonableness.

McDEVITT, J., concurs.