No. 83-85

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

BETH HOWE,

        Plaintiff and Appellant,

  -vs-

BIG HORN ELECTRIC COOPERATIVE, INC.,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Big Horn,
The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Patten & Renz, Billings, Montana
           D. Michael Eakin, Montana Legal Services, Billings,
           Montana

      For Respondent:

           Bert W. Kronmiller; Kronmiller & Seykora,
           Hardin, Montana

---

Submitted on Briefs:  July 14, 1983

Decided:  October 19, 1983

Filed:  OCT 19 1983

_Ethel M. Harrison_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal involves the reasonableness of a Rural Electric Cooperative's termination of service to a customer. After a hearing in the District Court of the Thirteenth Judicial District of the State of Montana in and for the County of Big Horn, The Honorable Robert H. Wilson dismissed the member's complaint.

Appellee Big Horn County Electric Cooperative, Inc., (hereinafter the Co-op) is a membership corporation organized and existing under the Rural Electric and Telephone Cooperative Act, Section 35-18-101, MCA, et. seq., and appellant is a member of the Co-op. On September 21, 1979, appellant executed an "Application for Membership and for Electric Service," attempting to secure electric service for the house she was renting south of Lodge Grass, Montana, in an area served by the Co-op. The owner of the house, appellant's landlord, had been supplied electricity by the Co-op at the residence before he moved out and all the necessary wiring and other hardware were in place. At the time appellant applied for service, there was an outstanding bill of approximately $270 which had been amassed by appellant's landlord. Appellant agreed to be liable for and pay $10 per month to reduce the delinquent bill, though the record is unclear as to how the agreement came about. Appellant claims she was required to agree to this arrangement before she would be provided service, pursuant to a Co-op policy, but the Co-op contends she offered to make the payments. The application was approved and

appellant's electricity was turned on.

Appellant complied with the agreement through the remainder of 1979 and 1980. However, it appears that she lost her job in the winter of 1980-81 and began having difficulty making the payments. The payments were not always made on time, and instead of paying the extra $10 per month she was only paying $1 over her own bill. After sporadic payments in the spring of 1981, appellant received a "Notice of Termination of Service and Demand for Payment" on July 14, 1981. Appellant made one payment leaving the unpaid portion at $41.83, and on July 18, 1981, her service was disconnected.

This action was commenced on August 10, 1981, by appellant, alleging that she was coerced into the agreement, which amounted to extortion and an unfair trade practice in violation of Sections 30-14-103 and 45-6-317, MCA. By her complaint, appellant sought a temporary restraining order to have her service reconnected, a declaratory judgment that the Co-op's policy was illegal and an injunction to prevent the Co-op from enforcing the policy. The temporary restraining order and order to show cause was issued and a hearing date set.

At the hearing, it was stipulated between counsel that the issue upon which the case rested was whether "the policies and by-laws of the Electric Cooperative regarding the refusal of service based upon charges against the land is valid and proper." The specific policy concerned is commonly known as Policy Number 24A, which was adopted by the Board of Trustees of the Co-op on March 13, 1979. Policy 24A gives the manager of the Co-op the authority to

discontinue service to a member or customer who fails to pay the fees incurred for the service. After certain documents and facts were stipulated to and briefs filed, the case was submitted to the District Court judge for his decision. On November 12, 1982, the judge found that the policies, rules and regulations of the Co-op were part of a binding contract between the Co-op and appellant, and that the policy in question was reasonable. The complaint was ordered dismissed and from this order the appeal is taken.

Appellant has framed the issue thus: May a rural electric cooperative make electric service to one customer contingent upon payment of the delinquent bill of another customer? This issue is not capable of resolution on the District Court record as it stands.

The relationship between the Co-op and each member is contractual in nature. Sutton v. Hunziker (1954), 75 Idaho 395, 272 P.2d 1012. The articles of incorporation, by-laws, rules and regulations of the cooperative contain the provisions of the contract, as the member agrees to be bound by them in signing the application for membership. Such was the case in the present controversy as the Co-op's membership application provides that the member agrees to "comply with, and be bound by the provisions of the articles of incorporation and by-laws of the Cooperative, and such rules and regulations as may from time to time be adopted by the Cooperative." The rules, regulations and by-laws adopted after the execution of this contract became a valid part of the agreement.

While it is true that the member is bound by this agreement, the articles, by-laws, rules and regulations of

the cooperative must be reasonable.  Sutton, supra; Smith v. Pickwick Electric Cooperative (1963), 212 Tenn. 62, 367 S.W.2d 775.  Cooperatives hold a favored position in the law.  In Montana, rural electric cooperatives have limited powers of eminent domain, Section 35-18-106(9), MCA; have the right to conduct power lines across public thoroughfares, Section 35-18-106(8), MCA; and are exempt from Montana tax laws, Section 35-18-503, MCA.  Conversely, cooperative members are often in a disadvantageous position with respect to the cooperative, as they are in rural areas which are less likely to be serviced by a public utility and must rely on the cooperative for power.  In dealing with an unreasonable rule, a member has the option of either attempting to amend the adopted rule or to discontinue service, both of which are inadequate remedies.  This inadequacy is exacerbated by the circumstances in the present case where the member's residence is already connected with the cooperative and finding an alternative supply of electricity would be quite costly.  This disparity between the relative positions gives rise to an obligation on the part of the Cooperative to deal in a reasonable manner with its members.  The Cooperative may not foist either unreasonable rules or interpretations of rules on its members simply because they have agreed to be bound by the actions taken by the governing body.  The adoption and implementation of all rules must be done fairly and in a reasonable manner with proper regard for the rights of the member and his property.

Whether a rule is reasonable is a question of fact. Sutton, supra.  Likewise, the reasonableness of its

interpretation is a question of fact. In the present case, the District Court found that the policy of the Co-op allowing disconnection of service for nonpayment of fees was reasonable. We do not disagree with this finding. However, the dispositive issue in this case is not whether the policy is reasonable, but whether its implementation was reasonable. As stated above, this issue is not capable of resolution on the present record.

From its order dismissing appellant's complaint, it appears the District Court assumed that appellant agreed to be liable for the prior customer's bill of her own volition, making it reasonable for the Co-op to disconnect for nonpayment. However as noted above, there is a basic disagreement between the parties as to the facts and circumstances surrounding appellant's signing the application for electric service. Appellant contends she was required to agree to pay the delinquent bill before she would be provided service, but the Co-op claims she offered to make the payments. The District Court did not hold a hearing to determine whose contentions were correct, but relied on a stipulation of facts submitted by the parties which did not address the question either. Without first making a finding of the pertinent facts, the District Court erred by ruling that the Co-op acted reasonably. The District Court must find whether the agreement to pay was voluntary, or a result of unequal bargaining power to judge the reasonableness of the Co-op's use of Policy 24A. It is unreasonable for a Co-op to use its superior bargaining position to force a prospective member to pay another member's delinquent bill and terminate service for

nonpayment.

The District Court must further find whether appellant was delinquent so as to justify the termination of service. There was no finding of the amount of payments made, or whether they were made in payment of her own bill or her predecessor's bill. If the District Court finds that appellant was unreasonably coerced into paying the prior tenant's bill, such payments must be credited to her own bill and then a determination of its status made. If the District Court finds that appellant volunteered to pay the prior tenant's bill, then the court must find that she was delinquent to uphold the Co-op's termination of service.

Appellant raises a second issue, whether a rural electric cooperative serving customers on Indian trust land may require that the charges for electric service run with the land.

It was stipulated that the residence in question is located on the Crow Indian Reservation. The membership application provides that the member agrees to a lien on the property served to secure payment of the fees incurred. However, the application expressly exempts Indian trust land from this provision.

Reversed and remanded for further proceedings in accordance with this opinion.

John Conway Harrison
_____
Justice

We concur:

Frank J. Haswell
_____
Chief Justice

-7-

Daniel J Shea

_____

_____
Justices