[No. C029083. Third Dist., Apr. 6, 1999.]

JOHN TRINKLE, Plaintiff and Appellant, v.
CALIFORNIA STATE LOTTERY, Defendant and Respondent.

## COUNSEL

Estrada & Thomson and William D. Thomson for Plaintiff and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Martin H. Milas, Assistant Attorney General, Marybelle D. Archibald and David I. Bass, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**CALLAHAN, J.**—Plaintiff John Trinkle sought "restitution of and disgorgement of profits" earned by the California State Lottery (CSL) on the theory that CSL engaged in unfair business competition (Bus. & Prof. Code, § 17200 et seq.) by operating the "illegal" games of Keno and Scratcher. The trial court sustained CSL's demurrer without leave to amend. Trinkle appeals.

We conclude that the CSL, a state agency, is not a "person" within the meaning of California's unfair competition law and that statutory governmental immunity protects CSL from suit on the facts alleged. We will therefore affirm the judgment.

### BACKGROUND

Since this is an appeal following an order sustaining a demurrer, we summarize and accept as true all well-pleaded material allegations of the complaint. (*Hensler* v. *City of Glendale* (1994) 8 Cal.4th 1, 8, fn. 3 [32 Cal.Rptr.2d 244, 876 P.2d 1043]; *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].)

Plaintiff John Trinkle (Trinkle) is the owner of a partnership known as Galaxy Vending (Galaxy).[1] Galaxy is in the business of operating vending and amusement machines located in bars and similar establishments. Galaxy pays the business establishments a percentage of the revenues in exchange for allowing the machines to operate on their premises.

During 1988-1996 CSL installed in these same types of establishments and in competition with Trinkle's machines, "Keno" terminals which allowed patrons to bet money and win prizes. In June 1996 the California

---

[1] A second plaintiff, Jim Nichols individually and doing business as Stockton Music Company, did not appeal from the judgment.

Supreme Court declared Keno an unlawful activity.[2] From 1992-1996, CSL installed 4,100 "Scratcher" vending machines in competition with Trinkle's machines. In June 1996 the state Attorney General ruled that Scratcher machines "were illegal slot machines in violation of the California Penal Code . . ." and ordered them removed.

CSL's Scratcher and Keno games damaged Trinkle's business by causing a "dramatic drop in revenue" due to the diversion of patrons' funds from Trinkle's machines to CSL's machines. In August 1996, Trinkle timely filed a claim with the State Board of Control, which was rejected.

The first amended complaint purports to state only one cause of action— for unfair competition in violation of Business and Professions Code section 17200 et seq. Trinkle alleged that the advertising and marketing campaign by CSL was untrue and misleading in that it led the public to wager money on Keno and Scratcher games under the belief they were legal and authorized by statute. Trinkle prayed for "restitution of monies and the disgorgement of profits" obtained by CSL through operation of the two "illegal" games.

CSL filed a general demurrer to the first amended complaint. Trinkle's opposition simply asked the court for leave to file a second amended complaint, adding a new defendant and a new cause of action. The court continued the hearing on its own motion, ordering Trinkle to file a response addressing the merits of CSL's demurrer. Trinkle then filed supplemental points and authorities opposing the demurrer. The court sustained the demurrer without leave to amend on three grounds: (1) CSL is a governmental agency and not a "person" amenable to suit under the unfair competition law; (2) even if CSL were amenable to suit, damages are not available for past conduct; and (3) CSL's decision to proceed with Keno and Scratcher was protected by statutory discretionary immunity. (Gov. Code, § 818.4.)

## APPEAL

■ Although we exercise our independent judgment in reviewing a demurrer to determine whether the factual allegations of the complaint state a cause of action (*Schmidt* v. *Foundation Health* (1995) 35 Cal.App.4th 1702, 1706 [42 Cal.Rptr.2d 172]), we must affirm if the trial court's decision to sustain the demurrer was correct on any theory. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

---

[2]This allegation is an obvious reference to *Western Telcon, Inc.* v. *California State Lottery* (1996) 13 Cal.4th 475 [53 Cal.Rptr.2d 812, 917 P.2d 651], in which the high court concluded that "[b]ecause CSL may conduct only lotteries, and because CSL Keno, as described in the regulations, is not a lottery, CSL is not authorized to conduct its Keno game." (*Id.* at p. 495.)

"Under the Unfair Competition Act (UCA) found at Business and Professions Code section 17200 et seq., any unlawful, unfair or fraudulent business act or practice is deemed to be unfair competition. Business and Professions Code section 17200 defines unfair competition as including any 'unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) . . . of the Business and Professions Code.'" (*Podolsky* v. *First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 [58 Cal.Rptr.2d 89].)

■ Government Code section 815 declares that "[e]xcept as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." The statute amounts to a legislative declaration that governmental immunity from suit is the rule and liability the exception. "'Thus, in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable.'" (*Harshbarger* v. *City of Colton* (1988) 197 Cal.App.3d 1335, 1339 [243 Cal.Rptr. 463], italics in original; see also Cal. Government Tort Liability Practice (Cont.Ed.Bar 1992) § 2.8, pp. 76-77; Legis. committee com., 32 West's Ann. Gov. Code (1995 ed.) § 815, p. 167.)

■ Nowhere in the Unfair Competition Act (UCA; Bus. & Prof. Code § 17200 et seq.) is there a provision imposing governmental liability for violations of the act. Because there is no statute making public entities liable under the UCA, the general rule of governmental immunity must prevail.

Trinkle claims Government Code section 815.6 (all further unspecified statutory references are to this code), which imposes tort liability upon public entities for violation of "mandatory" duties, provides a statutory basis for overriding governmental immunity. Trinkle discerns such a mandatory duty in sections 8880.24 and 8880.35, which provide that "[i]n decisions relating to advertising and promotion of the Lottery" the CSL Commission and its director "shall" comply with the letter and spirit of laws governing false advertising, including Business and Professions Code section 17500.

The argument fails. Section 815.6 states, "Where a public entity is under a mandatory duty imposed by an enactment *that is designed to protect against the risk of a particular kind of injury,* the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty . . . ." (Italics added.) Thus, in order to hold the government liable for failure to discharge a mandatory duty imposed by statute, the statute must be intended to protect against the type of injury suffered by the plaintiff. (Cal.

Government Tort Liability Practice, *supra,* § 2.80, p. 156.) Where the harm was not one of the evils sought to be prevented by the statute, there can be no governmental liability. (*Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 620 [188 Cal.Rptr. 205].) Assuming sections 8880.24 and 8880.35 contain mandatory directives to CSL to comply with the false advertising statutes, these enactments are manifestly designed to *protect the public*, i.e., patrons of the lottery, from misleading or deceptive advertising in the promotion of lottery games. The statute's purpose is clearly not to safeguard the profits of gaming operators such as Trinkle who compete with CSL. Section 815.6 does not apply.

While we believe the above analysis is sufficient to dispose of the question, we uphold the judgment on the alternative ground that a state agency such as CSL is not a "person" within the meaning of the UCA.

The UCA prescribes penalties against "persons" who engage in acts of unfair competition. (E.g., Bus. & Prof. Code, §§ 17203 [injunction], 17206 [monetary penalties].) Business and Professions Code section 17201 defines "person" for the purposes of the unfair competition law: "[T]he term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."

Words of a statute must be given their ordinary meaning and receive a commonsense construction. (*Community Memorial Hospital* v. *County of Ventura* (1996) 50 Cal.App.4th 199, 209 [56 Cal.Rptr.2d 732].) The state is neither a natural person, partnership, corporation, association, nor other "organization[] of persons." It is a sovereign entity representing the people. Only through an unreasonable, strained construction can the state be deemed to fall within any of the statute's definitional categories.

Our conclusion finds support in case authority. (*Community Memorial Hospital, supra,* 50 Cal.App.4th at pp. 209-211 [county hospital may not be sued under the UCA]; *Santa Monica Rent Control Bd.* v. *Bluvshtein* (1991) 230 Cal.App.3d 308 [281 Cal.Rptr. 298] [rent control board, as a government agency, falls outside the definition of "person" set forth in the UCA].) Recently, the Second District squarely held that CSL, a government entity, is not a "person" within the meaning of the UCA and cannot be sued for violating its provisions. (*Janis* v. *California State Lottery* (1998) 68 Cal.App.4th 824, 831 [80 Cal.Rptr.2d 549].)

Trinkle nevertheless urges that we should find CSL amenable to suit for violations of the UCA because (1) even though it is a state agency, CSL operates in the fashion of a private business by competing with Trinkle's

customers for game-playing dollars, and therefore liability would not infringe upon the state's sovereign functions, and (2) civil liability for unfair competition is consistent with the spirit of section 8880.24, which requires CSL to comply with laws regulating false and misleading advertising.

These arguments are unavailing. As shown previously, there is no statute in the UCA which overcomes the general rule of governmental tort immunity. If there is to be an exception in this area of regulation, it is the role of the Legislature to carve one out. This court cannot do so by implication, or because we believe that holding governmental entities liable for UCA violations is more in keeping with the "spirit" of the law.

Even if CSL as a state agency is not directly subject to suit under the UCA, Trinkle maintains that it may be vicariously liable for the conduct of its employees pursuant to section 815.2. This section establishes the principle that a public entity may be liable under the doctrine of respondeat superior for the acts of its employee *if* such acts are not otherwise immune from liability. (Cal. Government Tort Liability Practice, *supra*, § 2.9, p. 78.)

The complaint does not identify any conduct by CSL employees which was not immune from liability. The wrongful conduct as alleged in the complaint was that CSL's advertising and marketing campaign deceived and misled the public into believing that the Keno and Scratcher games were legal. However, public entities are absolutely immune from suit for any injuries caused by misrepresentation, whether it be negligent or intentional. (§ 818.8.) Consequently, CSL enjoys blanket immunity from liability based on misrepresentation, regardless of whether its employees would be individually liable.[3] (*Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 43 [37 Cal.Rptr.2d 860].)

Trinkle suggests that the facts alleged in the complaint could give rise to a cause of action on other legal theories such as common law unfair competition or negligent interference with prospective advantage. He does not explain however, how such theories circumvent the barrier of governmental immunity.

Finally, Trinkle asserts the facts pleaded in the complaint are susceptible of amendment to state a cause of action for public nuisance. He is incorrect. A private person cannot recover damages for a *public* nuisance unless it also constitutes a *private nuisance as to him.* (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 144, p. 824; *Venuto v. Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124-125 [99 Cal.Rptr. 350] [in order to

---

[3]No CSL employees are named as defendants in the complaint.

obtain relief, private person must show special injury different in kind from public generally].) A private nuisance action can be brought only by those who have *property rights* in respect to the use and enjoyment of land. (*Koll-Irvine Center Property Owners Assn.* v. *County of Orange* (1994) 24 Cal.App.4th 1036, 1041 [29 Cal.Rptr.2d 664].)

According to Trinkle's complaint, he owns vending machines which are installed in third party business establishments for the amusement of patrons. Trinkle thus has no real property interest upon which to base a cause of action for nuisance.

We conclude that CSL is not amenable to suit under the unfair competition statutes. Since there is no liability as a matter of law, the complaint is not curable by amendment and leave to amend was properly denied. (*Mission Oaks Ranch, Ltd.* v. *County of Santa Barbara* (1998) 65 Cal.App.4th 713, 721 [77 Cal.Rptr.2d 1].)

DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 23, 1999.