No. 98-637

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 222

BONNIE GRANBOIS,

Plaintiff and Appellant,

v.

BIG HORN COUNTY ELECTRIC

COOPERATIVE, INC., a Montana

corporation,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Big Horn,

The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

D. Michael Eakin, Montana Legal Services; Billings, Montana

For Respondent:

James E. Torske, Attorney at Law; Hardin, Montana

For Amicus:

Maxon R. Davis and Tiffany B. Lonnevik, Davis, Hatley, Haffeman

& Tighe, P.C.; Great Falls, Montana (MECA)

---

Submitted on Briefs: June 3, 1999

Decided: September 22, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

1. ¶Big Horn County Electric Cooperative, Inc. (the Cooperative) provides electric service to property where Appellant, Bonnie Granbois, lives. The property is located on the Northern Cheyenne Indian Reservation. When Bonnie Granbois moved her trailer onto the property, the Cooperative informed her that before she could receive electric service, a delinquent bill of the person who previously lived on the property would have to be paid. Thus, Granbois paid $932.07 to satisfy the bill. Thereafter, she brought an action against the Cooperative, alleging that its actions constituted an unfair trade practice in violation of § 30-14-103, MCA, and that it breached its obligation to deal with her in good faith. Both parties filed motions for summary judgment. The District Court granted judgment in favor of the Cooperative. Granbois appeals, and we reverse.

2. ¶We restate the dispositive issues in this case as follows:

3. ¶1. Whether the Cooperative's bylaw provision, requiring payment of an existing member's delinquency prior to transfer of the membership to a new member, is reasonable?

4. ¶2. Is a condition of receiving electric service on Indian trust land subject to paying a prior customer's delinquent bill, in effect, a lien or encumbrance upon the land in violation of federal law?

5. ¶By resolving the first issue in the negative, we obviate the need to address the second issue in this opinion.

## FACTUAL BACKGROUND

1. ¶The Cooperative is incorporated pursuant to Montana's Rural Electric and Telephone Act, now codified at Title 35, Chapter 18 of the Montana Code Annotated. The Cooperative provides the only electric service available to the property involved in this matter.

2. ¶The property is a 40-acre parcel of Indian trust land located on the Northern Cheyenne Indian Reservation in Big Horn County. It is held in trust by the United States for the benefit of several owners who have undivided interests in the land.

One owner is the daughter of Bonnie Granbois and the wife of Jerry Spang, who lived on the property before Granbois. Granbois's other children also have ownership interests in the property.

3. ¶In 1992, the Cooperative constructed a single service line onto the property to service Spang's mobile home. The line was constructed as a result of Spang's "Application for Membership and Electric Service." In his application, he agreed to pay a minimum charge for electric service until February 25, 1997, as a condition for membership.

4. ¶In March 1995 the Cooperative terminated Spang's electric service because he was delinquent in his payments in the amount of $932.07. Spang eventually removed his mobile home from the property.

5. ¶Two years later, when Granbois decided to move her mobile home onto the property, the Cooperative instructed Granbois that Spang's delinquent bill must be paid before his membership to the Cooperative could be transferred to her as a new member. In addition, Granbois paid $299.50 in normal charges associated with a new membership. Electric service was then resumed.

6. ¶The bylaws of the Cooperative provide that the amount of a member's delinquent payments becomes a charge against the membership certificate "which must be paid when the membership is transferred to another person." The bylaws expressly provide that:

[T]he amount of any delinquent amounts unpaid by any consumer and/or member of the Cooperative shall become a lien upon the property served or a charge against the membership certificate of any consumer or member, which must be paid when the membership is transferred to another person, provided, that in the event the property is being served under the delinquent membership is Indian lands, whether allotted lands or tribal lands, said charge shall not become a lien upon such allotted or tribal Indian lands.

Because the Cooperative does not allow multiple memberships at any single meter location where a current membership exists, a membership must be terminated at a particular location before a new member may receive electric service at that location.

1. ¶After Granbois paid Spang's delinquent bill and became a member of the Cooperative, she commenced this action. Her complaint, which was filed on August 27, 1997, alleged that the Cooperative used its superior bargaining position against her and that its actions constituted an unfair trade practice in violation of § 30-14-

103, MCA. She requested actual damages in the amount of $932.07 and treble damages, pursuant to § 30-14-133, MCA. She also alleged that the Cooperative breached its obligation to deal with her in good faith and that she should be entitled to recover punitive damages.

2. ¶This matter was eventually submitted to the District Court on stipulated facts, and the parties filed cross motions for summary judgment. In her brief in support of her motion for summary judgment, Granbois asked the District Court to enter partial summary judgment in her favor on the issue of liability and unfair trade practice damages, reserving the issue of punitive damages for trial.

3. ¶On October 5, 1998, the District Court entered summary judgment in favor of the Cooperative from which Granbois appeals.

## STANDARD OF REVIEW

1. ¶On appeal from a summary judgment, this Court reviews a case *de novo* based on the same criteria applied by the district court. *See Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663). Since the parties submitted this case with a stipulation of the material facts, we must therefore determine whether the moving party is entitled to judgment as a matter of law. *See, e.g., Stutzman*, 284 Mont. at 377, 945 P.2d at 34.

## DISCUSSION

1. ¶Whether the Cooperative's bylaw provision, requiring payment of an existing member's delinquency prior to transfer of the membership to a new member, is reasonable?

2. ¶The District Court granted summary judgment in favor of Big Horn and denied Granbois's motion for summary judgment. The trial court concluded that the bylaw provision which restricts transfer of a membership to a new member until delinquent accounts are made current, was reasonable as a matter of law. In doing so, it recognized that this Court addressed a similar issue in our decision in *Howe v. Big Horn Elec. Coop., Inc.* (1983), 206 Mont. 297, 670 P.2d 936, but concluded that our analysis of the issue in *Howe* was dicta and not dispositive. The District Court was persuaded by two Idaho cases, *First Fed. Sav. & Loan Ass'n v. East End Mut. Elec. Co.* (Idaho Ct. App. 1987), 735 P.2d 1073 and *Stevenson v. Prairie Power Coop., Inc.* (Idaho 1990), 794 P.2d 620 which addressed similar issues. The District Court

ultimately rested its decision on the basis that cooperatives are exempt from regulatory control because of the unique relationship between a cooperative and its members. It determined that because of that relationship being contractual in nature, courts should not unnecessarily interfere with the parties' freedom to contract. The District Court concluded that a cooperative may place restrictions on the transfer of memberships through the enactment of bylaws. It further reasoned that the restrictions on membership are "to protect other members from bearing the economic consequences of the outgoing member's default." *First Fed. Sav. & Loan Ass'n*, 735 P.2d at 1077. Finally, the court stated that Big Horn's policy, expressed in the applicable bylaw provisions, was a reasonable means of achieving its goal of protecting its members.

3. ¶Section 35-18-301, MCA, specifically authorizes a cooperative to create restrictions on memberships. In particular, § 35-18-301(2), MCA, provides that "[m]embership in the cooperative shall not be transferable, except as provided in the bylaws. The bylaws may prescribe additional qualifications and limitations in respect to membership." A Cooperative has the statutory power to adopt, amend, and repeal its bylaws, pursuant to § 35-18-106(11), MCA. Section 35-18-207, MCA, grants cooperatives broad flexibility to adopt bylaws defining the rights and duties of its members and the regulation and management of cooperative affairs. According to the stipulated facts, the members of the Cooperative duly adopted bylaws subsequent to the Cooperative's incorporation.

4. ¶In *Howe*, we considered an electric cooperative's formal policy which allowed the manager of the cooperative to disconnect service to a member or customer who failed to pay the fees incurred for the service. *Howe*, 206 Mont. at 299, 670 P.2d at 937. The facts in *Howe* were similar to the facts presented here. Attempting to secure electrical service for her home, a potential cooperative member agreed to pay ten dollars per month toward a previous member's delinquent bill until it was paid in full, plus her own fees, to acquire electric service. When the customer was unable to pay the full amount of the bill each month, she paid only her fees and one dollar toward the delinquent amount. *Howe*, 206 Mont. at 298-99, 670 P.2d at 937. Eventually, the cooperative disconnected her service. *Howe*, 206 Mont. at 299, 670 P.2d at 937.

5. ¶The Court in *Howe* faced the question of whether the cooperative's actions in disconnecting the member's service were reasonable. The parties stipulated to the material facts and further stipulated that the dispositive issue was "whether the policies and by-laws of the Electric Cooperative regarding the refusal of service based upon charges against the land is [sic] valid and proper." *Howe*, 206 Mont. at

299, 670 P.2d at 937. On appeal, however, the appellant framed the issue as, "May a rural electric cooperative make electric service to one customer contingent upon payment of the delinquent bill of another customer?" *Howe*, 206 Mont. at 299, 670 P.2d at 937.

6. ¶We concluded in *Howe* that the issue as framed could not be resolved on the basis of the record presented. *Howe*, 206 Mont. at 299-300, 670 P.2d at 937. We agreed with the District Court's finding that the policy of the Co-op allowing disconnection of service for nonpayment of fees was reasonable. However, we remanded the matter because we determined that the dispositive issue was not whether the policy was reasonable but whether its implementation was reasonable. We stated that this question could not be answered on the facts presented. It was clear from the record that the District Court assumed that the appellant had voluntarily agreed to pay for the previous customer's bill, thus making it reasonable to disconnect for nonpayment. We observed, however, that there was a basic disagreement between the parties as to whether the customer voluntarily agreed to make the payment or was required to do so as a condition of receiving service. We remanded the matter with instructions that:

The District Court must find whether the agreement to pay was voluntary, or a result of unequal bargaining power to judge the reasonableness of the Co-op's use of Policy 24A. *It is unreasonable for a Co-op to use its superior bargaining position to force a prospective member to pay another member's delinquent bill and terminate service for nonpayment.*

*Howe*, 206 Mont. at 301-02, 670 P.2d at 938 (emphasis added).

1. ¶On remand our message to the District Court was clear: If it determined that the appellant had voluntarily paid the previous member's unpaid bill, then the implementation of the policy, that is, disconnection of service for nonpayment, was reasonable. However, if the District Court determined that the appellant was forced to pay the previous member's unpaid bill in order to get the service connected, the implementation was unreasonable.

2. ¶In the case *sub judice*, as in *Howe*, the parties stipulated to the relevant facts and the matter was submitted to the District Court on cross motions for summary judgment. The wording of the bylaw provision at issue in this case is different than

the one we examined in *Howe*. In fact, the bylaw in question here, rather than simply providing that unpaid bills may result in a disconnection of electrical service, provides that delinquent accounts must be paid when a membership is transferred to another person. The Big Horn staff advised Granbois that the Spang membership would not be transferred and there would be no electrical services provided until the delinquency was paid.

3. ¶Writing for the unanimous Court in *Howe,* Justice Harrison discussed the unique relationship between a cooperative and its membership. He recognized that electric cooperatives inherently hold a favored position in the law, and that conversely, cooperative members are often in a disadvantageous position with respect to the cooperative. This disadvantage is heightened in rural areas which are less likely to be serviced by a public utility and where citizens must rely on the cooperative for power. In dealing with an unreasonable rule, a member has only limited options: attempt to amend the rule or discontinue service. He said that such remedies, in and of themselves, are inadequate, especially when the member's residence is already connected with the cooperative and finding an alternative supply of electricity would be quite costly. *Howe*, 206 Mont. at 300, 670 P.2d at 937-38.

4. ¶Accordingly, this Court concluded that although the relationship between the electric cooperative and each of its members is contractual in nature, as defined by the cooperative's bylaws, rules, and regulations, the bylaws, rules, and regulations, as well as their implementation, must be reasonable. *See Howe*, 206 Mont. at 300-01, 670 P.2d at 938. We stated quite clearly in *Howe* that "[i]t is unreasonable for a Co-op to use its superior bargaining position to force a prospective member to pay another members's delinquent bill and terminate service for nonpayment." *Howe*, 206 Mont. at 301-02, 670 P.2d at 938. We conclude that the bylaw provisions at issue here, that make transfer of a membership to a new member contingent on the previous member's delinquent bill being paid in full, are unreasonable.

5. ¶In reaching its decision that the bylaw provisions were reasonable, the District Court failed to consider whether the Cooperative's bylaws were reasonable to the potential consumer who has no other source for electric power. While existing Cooperative members protect themselves by not having to share in the debt of a delinquent member, the potential consumer may be forced to take on the burden of the debt to obtain electric service. This is especially true in situations like the one presented here, where a potential consumer is required to obtain a membership transfer instead of obtaining a "new" membership, and when no other electric service provider is available. The Cooperative argues that it didn't require Granbois to pay the bill, it just required the bill to be paid in full before electrical service

would be provided. Such a policy, however, unmistakably and unreasonably allows the Cooperative to pressure the new tenant or occupant of the property to pay the previous member's delinquent bill. There is simply no incentive whatsoever for the Cooperative to pursue payment from the person who actually owes the bill.

6. ¶Thus, there is more at issue than a potential consumer simply trying to meet an electric cooperative's conditions in obtaining a membership certificate. If a previous member vacates the premises leaving a delinquent account, the bylaws effectively allow the Cooperative to compel the new consumer to either pay the predecessor's delinquent bill or go without electricity. Such a disparity in the relative positions of the consumer and the cooperative necessarily requires the cooperative to deal with its members reasonably. The rule adopted by the Cooperative in this instance, that is, requiring potential customers to pay a previous member's delinquent bill in full is an unreasonable restriction on the electric consumer's access to electric service. Thus, we reverse the District Court's order granting summary judgment in favor of the Cooperative and remand this matter with instructions to enter partial summary judgment in favor of Granbois in the amount of $932.07.

7. ¶Since the District Court entered judgment in favor of the Cooperative, it never reached Granbois's claim that the actions of the Cooperative constitute a violation of the Montana Unfair Trade Practices and Consumer Protection Act, (the Act) §§ 30-14-101, et seq., MCA, specifically, § 30-14-133, MCA, which entitle her to treble damages. Nevertheless, the parties, as well as *amicus*, have partially briefed the issue on appeal. Under the circumstances, we feel it best to provide direction to the District Court on the issue.

8. ¶ The Cooperative asserts that it is exempt from the Act because it sells a product or service as a public utility, which is excluded from protection as provided in the definition section, § 30-14-202(1), MCA. This provision is found in part 2 of the Act which is entitled "Unfair Trade Practices Generally."

9. ¶Granbois's claim, however, is brought under part 1 of the Act which is entitled "Consumer Protection Act." The exemption provision in Part 1, found at § 30-14-105 (1), MCA, specifically exempts "actions or transactions permitted under laws administered by the Montana public service commission acting under statutory authority of this part or the United States." This exemption does not include the Cooperative since the Cooperative is not regulated by the PSC. Part 1 clearly exempts only those transactions regulated by the Public Service Commission.

10. ¶It is apparent that the legislature provided different exemption provisions in parts 1 and 2. While part 1 offers general consumer protection, part 2 primarily covers anti-competitive practices to protect businesses from the predatory practices of other

businesses. Since Granbois's claim is brought under part 1, we conclude that the Cooperative is not exempt.

11. ¶The remaining matters to be determined are whether the actions of the Cooperative constitute a violation of the Montana Unfair Trade Practices and Consumer Protection Act, whether the actions constitute a breach of a duty of good faith and fair dealing as alleged by Granbois, and finally whether she is entitled to any further damages.

12. ¶Reversed and remanded for further proceedings consistent with this opinion.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson did not participate.

Justice Karla M. Gray, dissenting.

1. ¶I respectfully dissent from the Court's opinion on the sole issue stated because *Howe*--the only case cited by the Court--clearly does not support the Court's decision. I also dissent from the Court's decision to address the Montana Unfair Trade Practices and Consumer Protection Act (Act).

2. ¶The Court properly observes that, in the similar *Howe* case, we agreed with the district court that "the policy of the Co-op allowing disconnection of service for nonpayment of fees [relating in part to a prior member's delinquency] **was reasonable**." *See Howe*, 206 Mont. at 301, 670 P.2d at 938 (emphasis added). The Court also correctly notes that we remanded in *Howe* for a determination of whether the **implementation** of the **reasonable** policy was reasonable--that is, whether the plaintiff had voluntarily agreed to pay the delinquency, as the cooperative contended, or had been forced or required to do so, as the plaintiff alleged. *See Howe*, 206 Mont. at 301-02, 670 P.2d at 938. In purported reliance on *Howe*, the Court in this similar case then concludes that the bylaw provisions here--comparable to the policy we determined was reasonable in *Howe*--is unreasonable as a matter of law. I cannot understand how *Howe*'s opposite conclusion on the policy at issue there can be used to support the Court's decision here. Indeed, with regard to the reasonableness of the bylaw provisions at issue here, it is clear that *Howe* mandates that we affirm the District Court.

3. ¶Thus, I disagree with the Court's conclusion that the Cooperative's bylaw provision at issue here is unreasonable as a matter of law because that conclusion is totally at odds with our decision in *Howe*. Moreover, while I agree that a potential member's interests must be balanced with those of existing members, I disagree with the Court's implicit determination that the interests of existing members must give way as a matter of law to those of a potential new member. The Court's decision ignores both the interests of existing members of the Cooperative and the statutory authority of cooperatives to set the terms by which memberships can be transferred. *See* § 35-18-301(2), MCA. Indeed, I fear this decision will unravel the entire basis on which cooperatives have organized and managed themselves in Montana for six decades or more.

4. ¶In addition, I simply cannot square the Court's instructions to the District Court to enter partial summary judgment for Granbois in the amount of $932.07 with its subsequent statement that matters remaining to be determined are whether the Cooperative's actions violated the Act and/or breached the covenant of good faith and fair dealing. Here, the only two causes of action alleged by Granbois are violation of the Act and breach of the covenant. If, as the Court says, the merits of Granbois' claims under those two theories remain to be decided, what is the basis for

entering judgment in her favor for a specified amount of damages? The Court does not explain and I am unaware of any legal principle under which damages can be awarded to a plaintiff as a matter of law prior to any decision that a defendant is liable for damages. This will make for interesting proceedings on remand, at the very least, and may prove to be an interesting precedent in future cases as well.

5. ¶For these reasons, I would affirm the District Court and would not address the Act itself or its applicability here. The Court having done so, however, I feel compelled to comment briefly on its discussion. In the guise of "provid[ing] direction" to the District Court on this issue never addressed there, the Court actually resolves the issue of whether the Cooperative is exempt from the Act. In my opinion, it is both unwise and unnecessary for this Court to fall into the trap of addressing every issue parties brief on appeal, when the underlying proceedings never reached the stage of addressing such issues. To do so only increases our workload while, at the same time, intruding this Court into the proper realm of the district courts which are more than capable of making such determinations.

6. ¶I would affirm the District Court and I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY