No. 02-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 282

MONTANA VENDING, INC., a Montana corporation,

       Plaintiff,

   v.

THE COCA-COLA BOTTLING COMPANY OF MONTANA, a
corporation; BCI COCA-COLA BOTTLING COMPANY OF
LOS ANGELES, a corporation; PEPSI-COLA BOTTLING COMPANY
OF GREAT FALLS, a corporation; ADMIRAL BEVERAGE
CORPORATION, a corporation; PEPSICO, INC., a corporation; and
THE GREAT FALLS PUBLIC SCHOOL DISTRICT,

       Defendants.

CERTIFIED QUESTION FROM:

       The United States District Court for the District of Montana,
       Missoula Division, Honorable Donald W. Molloy, Presiding Judge

COUNSEL OF RECORD:

       For Plaintiff:

              Alexander Blewett, III, and Christopher D. Meyer (argued),
              Hoyt & Blewett, Great Falls, Montana

       For Defendants:

              William P. Conklin (argued), Conklin, Nybo, Leveque & Lanning,
              Great Falls, Montana (Coca-Cola Companies)

              Jeanne M. Bender, Kyle A. Gray (argued), and Michelle M. Milhollin,
              Holland & Hart, Billings, Montana (Pepsi-Cola and Admiral Beverage)

              James R. Walsh and Dennis P. Clarke, Smith, Walsh, Clarke & Gregoire,
              Great Falls, Montana (Pepsico)

              Charles R. Johnson (argued), Marra, Wenz & Johnson, Great Falls,
              Montana (Great Falls Public School District)

                        Argued and Submitted:  July 18, 2002
                                  Decided:  October 9, 2003

Filed:

_____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Rule 44(c) of the Montana Rules of Appellate Procedure, Judge Sam E. Haddon of the United States District Court for the District of Montana, Great Falls Division, certified two questions to this Court. By order dated March 7, 2002, Judge Haddon recused himself, and Chief Judge Donald W. Molloy of the United States District Court for the District of Montana, Missoula Division, now presides over the case.

¶2 The two certified questions presented by the United States District Court are:

¶3 (1) Are the Great Falls Public School District's actions of entering into exclusive agreements for the sale of soft drink products in its facilities legislative actions for which a school district is immune from suit under § 2-9-111, MCA (2001)?

¶4 (2) Is the Great Falls Public School District subject to suit under the Montana Unfair Trade Practices Act, § 30-14-101, MCA (2001), et. seq., as a "person" engaged as a "business" as defined in the Act?

¶5 We answer both these questions in the negative and hold that the Great Falls Public School District is neither immune from suit under § 2-9-111, MCA, for entering into exclusive agreements for the sale of soft drink products, nor a "person" engaged as a "business," as defined in § 30-14-202(2) and (7), MCA, of the Montana Unfair Trade Practices Act (MUTPA).

¶6 According to the facts submitted by the United States District Court, the Board of Trustees of the Great Falls Public School District (hereinafter, Board of Trustees and School District) discussed the possibility of an exclusive soft drink contract as a method of

2

enhancing the School District's nontax revenue at a public meeting on January 15, 1999. On July 1, 2000, the Board of Trustees adopted Policy Nos. 7210 and 7332. Policy No. 7210 provides, in pertinent part, that "[t]he District will seek and utilize all available sources of revenue for financing its educational and related programs. This includes revenues from nontax, local, state and federal sources." Policy No. 7332 provides, in relevant part, that "[r]evenue enhancement through a variety of District-wide and District approved marketing activities, including but not limited to advertising, corporate sponsorship, signage, etc., is a Board-approved venture."

¶7 In March 2001, the School District entered into "exclusive" agreements with Coke and Pepsi. Under the terms of those agreements, Coke and Pepsi agreed to pay $250,000 each, or $500,000 total, in annual installments of $50,000, to the School District for the exclusive right to provide vending machines and sell soft drink products at the School District's facilities over the next ten years.

¶8 Prior to June 2001, Montana Vending, Inc. (Montana Vending), supplied soft drink products and vending machines at the School District for about twenty years. After entering these exclusive contracts with Coke and Pepsi, the School District terminated its relationship with Montana Vending. Soft drink products are now sold exclusively by Coke and Pepsi through vending machines owned by them. The School District does, however, provide electricity to operate the machines, liability insurance for the facilities housing the machines, and custodial services to maintain the facilities housing the machines.

3

¶9 The School District entered into these exclusive agreements with Coke and Pepsi without a public bidding process or public request for proposal. Although Montana Vending was in a position to entertain any proposal made by the School District, it was not afforded an opportunity to participate in or compete for the "exclusive right" to sell soft drink products at the School District's facilities.

¶10 On August 28, 2001, Montana Vending brought suit against the Coke and Pepsi companies, among others, in state district court, alleging they had violated Montana's Unfair Trade Practices Act and caused Montana Vending great economic injury.[1] Coke and Pepsi filed a notice to remove the action to federal district court. Montana Vending subsequently dismissed its claim without prejudice and refiled its complaint in state district court, alleging violations of MUTPA and naming the School District as a defendant.

¶11 Coke, Pepsi, and the other named defendants again sought to remove the matter to federal district court on the basis that the School District had been fraudulently joined. At a hearing on January 24, 2002, the United States District Court concluded that the two questions of law presented above were of "essentially first impression" and would determine whether that court had jurisdiction. It therefore certified these questions to this Court.

## DISCUSSION

---

[1]In addition to the School District, Montana Vending brought suit against six corporations, including Coke and Pepsi, involved in the manufacture and distribution of soft drink products.

¶12 **Are the Great Falls Public School District's actions of entering into exclusive agreements for the sale of soft drink products in its facilities legislative actions for which a school district is immune from suit under § 2-9-111, MCA (2001)?**

¶13 As a governmental entity pursuant to § 2-9-111(1)(a), MCA, the School District claims immunity for entering the exclusive contracts with Coke and Pepsi for the sale of soft drink products in its facilities. It argues that the Board of Trustees was acting in a legislative capacity in adopting enabling policies and ultimately authorizing the execution of beverage contracts to fund educational and related programs, and thus should be held immune for its actions.

¶14 Section 2-9-111(2), MCA, provides that "a governmental entity is immune from suit for a legislative act or omission by its legislative body, or any member or staff of the legislative body, engaged in legislative acts." A legislative act includes actions by a school board that result in adoption of school board policies pursuant to § 20-3-323(1), MCA; however, it does not include administrative actions undertaken in the execution of a law or policy. Section 2-9-111(1)(c)(i)(C) and (1)(c)(ii), MCA.

¶15 In *Dagel v. City of Great Falls* (1991), 250 Mont. 224, 819 P.2d 186, this Court addressed the statutory requirements of § 2-9-111, MCA, as amended by the Legislature in 1991. We noted that the legislative purpose of the amendment was partly to clarify "that governmental entities are not immune under the legislative immunity statute for nonlegislative actions." *Dagel*, 250 Mont. at 232, 819 P.2d at 191. In so noting, we concluded that harassment by a supervisor employed by the City of Great Falls resulting in

5

an employee's constructive discharge was clearly not a "legislative act" for which immunity could be claimed. *Dagel*, 250 Mont. at 233, 819 P.2d at 191.

¶16    Following *Dagel*, this Court had the opportunity to examine whether a teacher was immune from suit under § 2-9-111, MCA, for her allegedly negligent actions of throwing a shot put on a school playground, striking and injuring a student. *Hedges v. Swan Lake and Salmon Prairie School District No. 73* (1992), 253 Mont. 188, 832 P.2d 775 (*Hedges II*). In *Hedges II*, we concluded there was no immunity for the school district or any member of its staff because there were no actions by the school board which resulted in the adoption of school board policy. *Hedges II*, 253 Mont. at 195, 832 P.2d at 778. As a result, there was no legislative act as defined in § 2-9-111(1)(c)(i)(C), MCA (1991), and thus, no immunity.

¶17    In this case, the School Board adopted Policy Nos. 7210 and 7332 for the purpose of raising revenue from nontax sources. The exclusive agreements with Coke and Pepsi entered into some nine months later was in furtherance of this objective. Although the School District asserts these agreements resulted in the adoption of a school board policy, and therefore, come within the sphere of actions which are immunized by § 2-9-111(2), MCA, it has provided no authority which would compel such a conclusion. Neither does the plain meaning of the immunity statute support the School District's assertion. For purposes of this case, the statute defines legislative actions as those which "result in the creation of law," § 2-9-111(1)(c)(i)(A), MCA, or which "result in the adoption of school board policies," § 2-9-111(1)(c)(i)(C), MCA. Thus, these provisions immunize a legislative body's adoption or enactment of policy in furtherance of its constitutional or statutory duties. Here, the School

District is insulated from legal challenge for its decision to enhance nontax revenue by way of commercial engagements, the essence of Policy Nos. 7210 and 7332.

¶18   It does not follow from this statutory language, however, that actions taken by a school district to effectuate the policies it has adopted are also immunized. Indeed, § 2-9-111(1)(c)(ii), MCA, clearly states otherwise, providing that "administrative acts undertaken in the execution of a law or public policy" are not immunized. *See also Kiely Const. LLC v. City of Red Lodge*, 2002 MT 241, ¶ 83, 312 Mont. 52, ¶ 83, 57 P.3d 836, ¶ 83, citing *Knight v. City of Missoula* (1992), 252 Mont. 232, 245, 827 P.2d 1270, 1278 (recognizing that the 1991 amendments to § 2-9-111, MCA, "make clear that a governmental entity is no longer immune for *all* its actions," only legislative actions). The School District's agreements with Coke and Pepsi, entered pursuant to Policy Nos. 7210 and 7332, are precisely the kind of administrative actions, taken to execute policy, which are exempted from the immunizing effect of the statute. Because the School District's agreements with Coke and Pepsi were in execution of previously adopted Policy Nos. 7210 and 7332, we conclude they were administrative, not legislative acts. Accordingly, we hold the School District is not immune from suit for entering into the exclusive agreements for the sale of soft drink products in its facilities.

¶19   **Is the Great Falls Public School District subject to suit under the Montana Unfair Trade Practices Act as a "person" engaged in "business" as defined in the Act?**

¶20   Section 30-14-205, MCA, provides, in relevant part, that it is unlawful for a person, directly or indirectly, to enter an agreement for the purpose of fixing the price or regulating

7

the production of an article of commerce in order to restrict trade to prevent competition in the distribution or sale of merchandise or commodities. According to § 30-14-202(7), MCA, of the Montana Trade Practices Act, the term "person" "includes any person, partnership, firm, corporation, joint-stock company, or other association engaged in business within this state." "Business" is defined as "any person, domestic or foreign, engaged in the production, manufacture, distribution, purchasing, or sale of any article of commerce within the state of Montana." Section 30-14-202(2), MCA. Because public entities, such as school districts, are not specifically mentioned in these definitions, we must look further to determine whether the School District is a "person" engaged as a "business" under the Act.

¶21 When interpreting a statute, our objective is to implement the objectives the legislature sought to achieve. *Western Energy Co. v. State*, 1999 MT 289, ¶ 11, 297 Mont. 55, ¶ 11, 990 P.2d 767, ¶ 11. The legislative intent is to be ascertained, in the first instance, from the plain meaning of the words used. *Cenex, Inc. v. Bd. of Com'rs for Yellowstone County* (1997), 283 Mont. 330, 335, 941 P.2d 964, 967. If the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning controls, and this Court need go no further nor apply any other means of interpretation. *Gulbrandson v. Carey* (1995), 272 Mont. 494, 500, 901 P.2d 573, 577. It is only when the intent cannot be ascertained from the language of the statute, that we examine legislative history. *Gulbrandson*, 272 Mont. at 500, 901 P.2d at 577.

¶22 Montana Vending argues that the School District is a "person" engaged as a "business" under MUTPA. In support of its contention, Montana Vending asserts that, by

8

using the term "includes" in its definition of "person," the legislature intended a broad and inclusive interpretation of the term which must be construed to "subserve the beneficial purposes" of MUTPA. *See* § 30-14-201, MCA. Accordingly, the list of "persons" identified in § 30-14-202(7), MCA, should not be considered exhaustive, but merely a list of possibilities.

¶23 In response, the School District and other named defendants argue that the plain language of MUTPA does not include school districts. They emphasize that when interpreting a statute, "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." *Infinity Ins. v. Dodson*, 2000 MT 287, ¶ 46, 302 Mont. 209, ¶ 46, 14 P.3d 487, ¶ 46. Citing no fewer than twenty instances throughout the code specifically including political subdivisions and other governmental entities in its definition of "person," the School District surmises that if the legislature had intended for MUTPA to apply to school districts, it would have so stated.

¶24 In the 1912 case *In re Beck's Estate* (1912), 44 Mont. 561, 576, 121 P. 784, 788, cited by the defendants Coca-Cola Company and BCI Coca-Cola Bottling Company of Los Angeles (collectively, Coke), this Court held that the State Orphans' Home was not a "person" capable of receiving a testamentary disposition of property. Noting that the purpose of the legislation allowing a testamentary disposition to be made to any "person" capable of taking was to prescribe rules to regulate the conduct, and protect and control the rights of citizens, this Court stated:

9

Therefore, the rule to be observed in the construction of statutes is, that the state is not included by general words therein creating a right and providing a remedy for its enforcement.

*In re Beck's Estate*, 44 Mont. at 574, 121 P. at 787.

¶25   In *State v. Hultgren* (1975), 168 Mont. 257, 261, 541 P.2d 1211, 1213, we reaffirmed the holding in *Beck* with the following general rule of statutory construction set forth in C.J.S. Statutes § 317:

The government, whether federal or state, and its agencies are not ordinarily to be considered as within the purview of a statute, however general and comprehensive the language of the act may be, unless intention to include them is clearly manifest, as where they are expressly named therein, or included by necessary implication.

¶26   Today, the general rule regarding inclusion in words such as "person" is set forth at 82 C.J.S. § 311 (1999):

A statute regulating only persons and corporations does not include the government itself, unless a contrary intention is clearly expressed. Thus, the word "person" used in a statute will not be construed so as to include the sovereign, whether the United States, or a state, or an agency thereof, or a city or town. However, the word may include the sovereign where the legislative intent to do so is manifest. Whether the word "person," as used in a statute, encompasses a state or the United States therefore depends on the context in which the word is found, including the purpose of the statute, the subject matter, and the legislative history.

¶27   Without resorting to MUTPA's legislative history, we note that the Act plainly applies to natural persons, partnerships, firms, corporations, joint-stock companies, and other associations engaged in business within this state. Section 30-14-202(7), MCA. Nowhere in the statute are school districts specifically identified.

10

¶28 Nonetheless, Montana Vending argues that the School District qualifies as a "person" because, literally defined, it is an "association." In support of its contention, Montana Vending cites Black's Law Dictionary defining "association," in pertinent part, as "a gathering of people for a common purpose." Reasoning that a school district is such a gathering, Montana Vending concludes that the School District is an association and therefore falls within the definition of "person" under MUTPA.

¶29 In response, the defendant, Admiral Beverage Corporation (Admiral Beverage), asserts that Montana Vending's own definition of association–"a gathering of people for a common purpose"–necessarily cannot apply to school districts because it speaks of a group of humans. It notes that, as defined in Title 20, chapter 6 of the Montana Code Annotated, a school district is a "*territory* . . . organized under the provisions of this title to provide public educational services under the jurisdiction of the trustees prescribed by this title." Section 20-6-101, MCA (emphasis added). Stressing that MUTPA requires a literal construction "so that its beneficial purposes may be subserved," Admiral Beverage argues that the School District cannot be an association because, by definition, it is a territory. *See* § 30-14-201, MCA.

¶30 The term "person" ordinarily refers to a living human being–a natural person. *In re Beck's Estate*, 44 Mont. at 572, 121 P. at 787. As used in § 30-14-202(7), MCA, of MUTPA, the term "person" also includes corporations and other business entities. A school district, however, is neither a natural person, partnership, corporation, association, or other organization of persons. Rather, it is part of the local government as defined in § 2-6-

11

401(1)(a), MCA, and a political subdivision of the state. Section 2-9-101(5), MCA; *see also Becky v. Butte-Silver Bow School Dist. # 1* (1995), 274 Mont. 131, 137, 906 P.2d 193, 196 (concluding that a school district is a public body for the purposes of the "right to know" provision of Article II, Section 9, of the Montana Constitution). Because school districts are, by definition, a governmental entity, as defined in § 2-9-101(3) and (5), MCA, we examine the plain language of MUTPA for legislative intent to include the government within the meaning of "person."

¶31 Montana Vending contends that the legislature manifested its intent to include governmental entities as persons under the Act by choosing not to create a specific exemption for public bodies, such as school districts. In support of its contention, Montana Vending points out that MUTPA contains only one exemption for public or governmental entities, which is found in part one of the Act. Section 30-14-105, MCA, provides:

> Exemptions. Nothing in this part shall apply to:
>     (1) actions or transactions permitted under laws administered by the Montana Public Service Commission acting under statutory authority of this part or the United States.

Montana Vending argues that if the legislature intended to exempt school districts from MUTPA, as it did for the Public Service Commission, it would have clearly manifested that intent.

¶32 We first note that, contrary to Montana Vending's assertion, § 30-14-105, MCA, does not wholly exempt the Public Service Commission from the provisions of that part, but limits the exemption to "actions or transactions permitted under laws administered by" the

12

Commission. Section 30-14-105(1), MCA. Further, while part one of MUTPA is entitled "Consumer Protection Act" and offers general consumer protection, part two, entitled "Unfair Trade Practices Generally," primarily covers anti-competitive practices to protect businesses from the predatory practices of other businesses. *Granbois v. Big Horn County Elec. Co-Op.*, 1999 MT 222, ¶ 31, 296 Mont. 45, ¶ 31, 986 P.2d 1097, ¶ 31. In *Granbois*, we held that part one, found at § 30-14-105(1), MCA, "clearly exempts only those transactions regulated by the Public Service Commission." *Granbois*, ¶ 30. Further, we noted that "it is apparent that the legislature provided different exemption provisions in parts one and two." *Granbois*, ¶ 31.

¶33 In this case, Montana Vending has brought its claim under part two of MUTPA, alleging unlawful trade practices generally. As noted in *Granbois*, the legislative purpose of the two parts is not the same. *Granbois*, ¶ 31. Accordingly, we are unpersuaded the legislature intended to include school districts as "persons" under MUTPA simply because it declined to create a special exemption for governmental entities in part two.

¶34 Further, the articulated purpose of the Act is "to safeguard the public against the creation or perpetuation of monopolies and foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented." Section 30-14-201, MCA. As a general rule, the government acts as a market regulator and not a competitor. 15A Am.Jur.2d Commerce § 37 (2003). Accordingly, the plain and ordinary interpretation of this language is that MUTPA was created to apply to *businesses*, not government.

13

¶35    The conclusion that the School District does not qualify as a "person" under MUTPA finds further support in several California state court decisions, construing the similarly worded California Unfair Practices Act and Unfair Competition Act. In *Community Memorial Hosp. of San Buena Ventura v. County of Ventura* (1996), 50 Cal.App.4th 199, 209, 56 Cal.Rptr.2d 732, 738, the Court of Appeals held that a county community hospital was not a "person" under the state's Unfair Practices Act. Cal. Bus. & Prof. Code § 17021 (1997) (defining "person" as "any person, firm, association, organization, partnership, business trust, company, corporation or municipal or other public corporation"). Noting that, "in the absence of express words to the contrary, neither the state nor its subdivision are included within the general words of a statute," the court reasoned that including the "county in the Unfair Practices Act . . . as it relates to the operation of its hospital would result in an infringement on its sovereign powers." *Community Memorial Hosp.*, 50 Cal.App.4th. at 210, 56 Cal.Rptr.2d at 738-39. Accordingly, the court concluded the county could not be held liable under the Act.

¶36    More recently, in *Trinkle v. California State Lottery* (1999), 71 Cal.App.4th. 1198, 1203-04, 84 Cal.Rptr.2d 496, 499, the court held the state lottery was not a "person" within the meaning of the Unfair Competition Act, and thus, could not be sued for violating the Act's provisions, even if the state lottery operated in the fashion of a private business. Like MUTPA, California's Unfair Competition Act (UCA) prescribes penalties against "persons" who engage in acts of unfair competition. Cal. Bus. & Prof. Code, §§ 17203, 17206 (1997). Under the UCA, "person" includes "natural persons, corporations, firms, partnerships, joint

14

stock companies, associations, and other organizations of persons." *See* Cal. Bus. & Prof. Code, § 17201 (1997). Noting the general rule that words of a statute must be given their ordinary meaning and receive a commonsense construction, the Court of Appeals stated,

> [t]he state is neither a natural person, partnership, corporation, association, nor other "organization of persons." It is a sovereign entity representing the people. Only through an unreasonable, strained construction can the state be deemed to fall within any of the statute's definitional categories.

*Trinkle*, 71 Cal.App.4th at 1203, 84 Cal.Rptr.2d at 499.

¶37 We similarly conclude and hold that the plain meaning of "person," as defined by MUTPA at § 30-14-202(7), MCA, does not include school districts. To conclude otherwise would result in a strained interpretation of the Act and infringe upon the governmental entity's statutory powers to raise revenue for the purpose of funding education related programs. *See* § 20-6-607, MCA (authorizing trustees of any district to lease district property and use any money collected for any proper school purpose).

¶38 The second issue posed by this certified question is whether the School District is engaged as a "business," as defined by MUTPA. Montana Vending argues the School District is engaged as a business because it deeply involved itself in the sale and distribution of soft drink products by entering the exclusive ten-year agreements with Coke and Pepsi, and points out that in addition to supplying the electricity, liability insurance, and custodial services for the facilities housing Coke and Pepsi's vending machines, the School District, through its students, has provided a ready and captive market for the sale of Defendants' soft drink products.

15

¶39    However, § 30-14-202(2), MCA, defines "business" as including "any *person*, domestic or foreign, engaged in the production, manufacture, distribution, purchasing, or sale of any article of commerce within the state of Montana." (Emphasis added.) Because we have already determined that the School District is not a "person" under MUTPA, it necessarily cannot be engaged as a "business" as the term is defined at § 30-14-202(2), MCA.

## CONCLUSION

¶40    The School District's act of entering exclusive agreements for the sale of soft drink products in its facilities is not a legislative act as defined at § 2-9-111(1)(c)(i)(C), MCA, and thus, the School District is not immune from suit under § 2-9-111(2), MCA. However, because we conclude the School District is not a "person" engaged as a "business," as defined at § 30-14-207(2) and (7), MCA, we hold the School District is not subject to suit under the Montana Unfair Trade Practices Act, § 30-14-101, MCA, et. seq.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER

16